Jeffrey VAN EE, Plaintiff,

v.

**ENVIRONMENTAL PROTECTION
AGENCY, et al., Defendants.**

No. Civ.A. 95–2079(JGP).

United States District Court,
District of Columbia.

May 12, 1999.

John A. Flyger, Steptoe & Johnson, L.L.P., Washington, DC, for Jeffrey Van EE, plaintiff.

Sylvia T. Kaser, Jeffrey S. Markowitz, U.S. Department of Justice, Washington, DC, Susan Kay Rudy, U.S. Department of Justice, Washington, DC, for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiff, an employee of the U.S. Environmental Protection Agency ("EPA"), brings this action against the EPA and the U.S. Office of Government Ethics ("OGE") seeking declaratory and injunctive relief. Plaintiff desires to address federal agencies, other than the EPA, on behalf of various environmental groups on matters of public concern unrelated to his work for the EPA. Defendants maintain that such communications would violate 18 U.S.C. § 205, a criminal conflict of interest statute, and OGE ethics standards, or create the appearance of such violations. Pending before the Court are cross-motions for summary judgment.

## BACKGROUND

Plaintiff Jeffrey van Ee is a GS–13 electrical engineer for the EPA. Second Amended Complaint ("Complaint") ¶ 2. His work is technical in nature; he is not involved in for the EPA. *Id.* For many years, plaintiff has been an active member and officer of numerous local environmental organizations in Nevada. Complaint ¶¶ 7, 8. These organizations interact frequently with agencies of the United States, which owns over 80% of the land in Nevada. Complaint ¶ 9.[1] On a number of occasions, plaintiff has communicated with federal agencies, other than the EPA, on behalf of local environmental groups, with the purpose to influence agency policies. Complaint ¶¶ 11, 13. Plaintiff maintains that the agency policies he sought to influence were wholly unrelated to his work at the EPA, and that he did not make the communications in his capacity as an EPA employee. Complaint ¶ 13.

In 1990, the EPA issued a reprimand to the plaintiff relating to his participation in a meeting with representatives of the Department of Interior, alleging that plaintiff had impermissibly acted as an "agent" of the Sierra Club Legal Defense Fund with respect to a "covered matter" in violation of 18 U.S.C. § 205, or had at least "created the appearance" of doing so, in violation of OGE ethics regulations. Complaint ¶ 14. Plaintiff was warned that further violations could result in disciplinary action, including termination.[2] Complaint ¶ 16.

---

1. These agencies include, for example, the Bureau of Land Management ("BLM") of the Department of the Interior, and the Departments of Energy and Defense. Complaint ¶ 9.

2. Plaintiff's alleged violation was referred to the United States Attorney's Office, which declined to prosecute. Complaint ¶ 17. The 1990 reprimand itself ultimately was rescinded on other grounds by the Merit Systems Protection Board. Complaint ¶ 18.

In December 1993, plaintiff sought guidance from the EPA as to what communications he could engage in without contravening federal law. Complaint ¶ 18. In response, EPA informed plaintiff that he may not communicate with federal agencies on behalf of any group in an attempt to influence federal policy with respect to any "particular matter"[3] and that he may not communicate on his own behalf in a way that would "create the appearance" that he is acting on behalf of another in such a manner. Complaint ¶ 20. Since receiving this response from the EPA in May 1994, plaintiff has significantly reduced his appearances before, and communications with, federal agencies, and has ceased being an officer of at least one organization. Complaint ¶¶ 28–33.

Plaintiff subsequently requested permission from the EPA to engage in six specific communications with other agencies.[4] Complaint ¶¶ 37, 38–43. After plaintiff provided the EPA with further information, the EPA responded that in its view, most of the activity suggested by plaintiff would be barred by § 205 and the remaining would "probably" be barred. Complaint ¶¶ 56–61. For example, plaintiff was told that § 205 would bar him from commenting at public hearings and in writing on behalf of the Southern Nevada Group of the Sierra Club to the Bureau of Land Management ("BLM") regarding mining, endangered species, land exchange and other issues, in anticipation of BLM's release of an Environmental Impact Statement. Complaint ¶ 38, 56; *see* Letter dated April 5, 1996, to plaintiff's counsel from EPA's Office of General Counsel ("April 5, 1996 Letter"), attached as Exhibit 6 to Memorandum in Support of Plaintiff's [First] Motion for Preliminary Injunction (12/9/96), at 1–6. Plaintiff would also be barred, according to the EPA, from commenting in writing and at public hearings

on behalf of environmental groups, with the intent to influence the Forest Service with regard to management alternatives for a recreational forest area. Complaint ¶ 41, 58; April 5, 1996 Letter at 9–10. The EPA further informed plaintiff that § 205 might bar him from requesting, as a board member of, and on behalf of, the Nevada Wildlife Federation, permission from the U.S. Forest Service for a group camping permit for the Federation to hold its quarterly board meeting. Complaint ¶ 39, 57; April 5, 1996 Letter at 6–7. EPA explained that if "the permit request process were purely ministerial—if permits are granted, for example, on·a first come-first served basis—we do not believe the request would violate § 205," but that if the process involved the "exercise of judgment" or "required persuasion," then the communication would "probably be barred." April 5, 1996 Letter at 7. Plaintiff then restated his question, asking whether "[i]n the event that a Forest Service employee does appear to have at least some discretion in the matter of issuing a camping permit, do EPA and OGE consider it a violation of 18 U.S.C. § 205 for Mr. van Ee to attempt to persuade the Forest Service employee to issue the camping permit by simply asserting its importance for the Nevada Wildlife Federation's quarter board meeting?" *Id.* EPA indicated that such a communication would be barred. *Id.* Finally, plaintiff also inquired regarding whether he could permissibly communicate his *own* views to BLM and the Fish and Wildlife Service, noting that he is a board member of the Nevada Wildlife Federation and that the hearings at which he would communicate his views may be attended predominantly or exclusively by members of the Nevada Wildlife Federation, and the federal government. April 5, 1996 Letter at 7–8. Plaintiff specifically asked whether in order to avoid

---

3. "Particular matter" is defined in 5 C.F.R. § 2635.402(b)(3). See discussion below.

4. Plaintiff took this action in response to defendants' motion to dismiss plaintiff's initial

complaint in this case on the ground that he lacked standing because he had suffered no injury, and that the case was not ripe. Complaint ¶¶ 36, 37.

creating an appearance of impropriety, it would be sufficient for him to state that he was speaking solely on his own behalf and not on behalf of any group. *Id.* at 8. EPA answered that plaintiff would not violate § 205 if his communications were "in fact his own views, made on his own, and not subject to the direction and control of the Nevada Wildlife Federation," even if plaintiff were at the same time a board member of the Nevada Wildlife Federation and even if his views are the same as those held by the organization. April 5, 1996 Letter at 8. In its response, EPA also explained that "[a]bsent any countervailing relevant facts," plaintiff's proposed communications would not violate the appearance principle. EPA explained that "countervailing relevant facts" might include plaintiff submitting his own views on Nevada Wildlife Federation stationary, or presenting Federation credentials at the meeting. *Id.*

Plaintiff seeks declaratory and injunctive relief. Plaintiff asserts that his communications with other agencies on his own behalf, regardless of whether he "appears" to speak on behalf of an organization, do not violate OGE standards by "creating an appearance" of violation of § 205. Complaint ¶ 92. Alternatively, if his communications do create an appearance of a violation of § 205, and therefore violate OGE standards, the OGE standards are unconstitutional. *Id.* ¶ 94. Plaintiff further states that his communications on behalf of organizations do not

violate § 205 or OGE standards, or if they do, § 205 and/or the OGE standards are unconstitutional. Complaint ¶¶ 96, 98. In sum, "Plaintiff seeks the right in this case only to communicate with federal agencies other than EPA on behalf of the Nevada groups on a volunteer basis with respect to issues that have nothing to do with Plaintiff's work for EPA." Plaintiff's Mem. in Support of Motion at 2–3.

### Statutory and Regulatory Provisions

This dispute implicates a number of statutory and regulatory provisions, which when read individually or in combination purportedly prohibit plaintiff's desired communications. Section 205 prohibits, under penalty of criminal prosecution, federal employees such as plaintiff from "act[ing] as an agent or attorney for anyone before any department [or] agency . . . in connection with any covered matter in which the United States is a party or has a direct and substantial interest" 18 U.S.C. § 205(a)(2).[5] The term "covered matter" is defined in § 205(h) to mean "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." OGE regulations define "particular matter" to include "matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons." 5 C.F.R. § 2635.402(b)(3).[6]

---

5. Section 205 reads, in relevant part, as follows:

> (a) Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, other than in the proper discharge of his official duties—
>
> . . .
>
> (2) acts as an agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest;

shall be subject to the penalties set forth in section 216 of this title.

Section 216 provides for criminal and civil penalties for violations of § 205.

6. Section 2635.402(b)(3) reads in full:

> Particular matter. The term particular matter encompasses only matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons. Such a matter is covered by this subpart even if it does not involve formal parties and may include governmental action such as legislation or policy-making that is narrowly focused on the interests of

Finally, OGE's regulation requiring federal employees to "endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards" is also at issue in this case. That requirement, set forth at 5 C.F.R. § 2635.101(b)(14), dictates that "[w]hether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts."

### Procedural Background

In his first motion for a preliminary injunction, filed along with his second amended complaint, plaintiff sought specifically to speak on behalf of the Nevada Wildlife Federation ("NWF") at a public meeting organized by the National Park Service regarding the creation of hiking trails in the Las Vegas area. *See* Memorandum Opinion, filed February 10, 1997, at 1. In an advisory ethics opinion, the EPA, citing 5 C.F.R. § 2635.101(b)(14), had warned plaintiff that he could speak at the meeting only on his own behalf and only if he affirmatively disavowed representation of the NWF. *Id.* at 2. In a Memorandum Opinion, the Court[7] denied plaintiff's motion, ruling that plaintiff was unlikely to succeed on the merits and that he failed to establish that he would be irreparably injured absent an injunction.[8] The parties subsequently filed cross-motions for summary judgment. Plaintiff also later filed a second motion for a preliminary injunction. This Court heard oral argument and took the motions under advisement. Plaintiff's second motion for a preliminary injunction recently was de-

nied, and the cross motions for summary judgment are now before the Court.

### DISCUSSION

Plaintiff seeks summary judgment arguing (1) § 205 does not cover his conduct; (2) if the Court construes § 205 to cover his conduct, the statute is unconstitutional as applied to plaintiff's speech; and (3) in any event, he cannot constitutionally be disciplined for merely creating an appearance of a violation of § 205. In their cross-motion for summary judgment and opposition to plaintiff's motion, defendants argue that § 205 prohibits plaintiff's conduct and that the law is constitutional, as is application of the appearance principle.

### I. APPLICABILITY OF § 205

■ Plaintiff urges that § 205, by its express terms, does not apply to his conduct. He argues that the Court should narrowly construe § 205 to avoid serious constitutional questions and because it is a criminal statute and the rule of lenity applies.

Section 205 prohibits a federal employee from (1) "acting as an agent or attorney for anyone" (2) "before any department, agency, court, court-martial, officer, or civil, military, or naval commission" (3) "in connection with any covered matter in which the United States is a party or has a direct and substantial interest." Plaintiff does not dispute that he seeks to address federal departments and agencies, however he does dispute that he is acting as an "agent" of the various organizations or that he seeks to address a "covered matter." Plaintiff's position is that § 205(a)

such a discrete and identifiable class of persons. The term particular matter, however, does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons. The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation or arrest.

7. At the time, this case was before Judge Norma Holloway Johnson, and subsequently was reassigned to this Court.

8. Plaintiff appealed the Court's ruling denying his motion for a preliminary injunction, but later stipulated to the voluntary dismissal of his appeal. *See Van Ee v. E.P.A.*, No. 97–5091.

only prohibits formal legal or quasi-legal representation in formal proceedings or transactions involving the government. *See* Plaintiff's Mem. in Support of Motion at 4–5.

The Court starts, as it must, with the statutory language itself. Section 205 prohibits employees from acting as attorney or agent before any department or agency in connection with any "judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." § 205(a)(2), (h). Even before looking at OGE regulations, it is clear that § 205 is far more expansive than plaintiff's proposed construction. Plaintiff argues that each of the specific terms listed in § 205(h) involves either a formal proceeding or claim against the government or a formal legal transaction with the government. Plaintiff's Mem. in Support of Motion at 6. Plaintiff also argues that the catchall phrase "or other particular matter" should be read "to refer to representation in other matters of a formal adversarial nature" and that a broader reading would render the words preceding the phrase superfluous. *Id.* at 8. The Court rejects plaintiff's reading of § 205(h). First, the phrase "adversarial" does not appear in the statute, and a number of the specifically listed matters are not necessarily adversarial. For example, "application[s]," and "request[s] for a ruling or other determination" are not always matters of a "formal adversarial nature." Moreover, § 205 encompasses a broad range of governmental functions, including "other proceeding[s]", requests for "determination[s]", and "controvers[ies]". There is no indication that these proceedings, determinations, or controversies are limited to ones that are legal or adversarial. Moreover, plaintiff's desire to limit application of § 205 to "formal" proceedings is not itself conclusive. It is not self-evident, for example, that public hearings, such as those at which plaintiff desires to appear, are not "formal" proceedings. Certainly if Congress

had intended § 205 to be limited to "formal legal" or "formal transactional" proceedings, as plaintiff suggests, Congress would not have used such expansive language.

Plaintiff objects to OGE's regulatory definition of "other particular matter," stating that it is so expansive that it renders each of the preceding terms in § 205(h) superfluous because each of the listed terms are encompassed within the OGE definition of "other particular matter." Plaintiff's Mem. in Support of Motion at 8. Plaintiff suggests a more narrow definition, and states, as an example, that "an 'appeal' or 'audit' could each constitute a non-enumerated 'particular matter' falling within the 'other particular matter' catchall definition of 'covered matter.' " *Id.* He argues that "[s]uch a reading would accord the catchall phrase meaning, yet not an unlimited meaning making each of the more specific preceding terms superfluous." *Id.* However, plaintiff's examples themselves show the fallacy of his argument: appeals certainly are encompassed by the preceding phrase "judicial or other proceeding" and an audit surely is an "investigation." Thus, the phrase "other particular matter" is not given additional meaning by encompassing plaintiff's examples.

More importantly, the phrase is not "or a particular matter," it is "or *other* particular matter," indicating that each of the proceeding terms are "particular matters" and any definition of "particular matter" certainly must include those terms. In § 205(h), Congress has merely provided examples of "particular matters" it intended to be "covered matters." Congress did not make that list exclusive, but rather provided that "covered matter" also includes "other particular matters." Plaintiff is correct that "other particular matters" should be defined as matters similar in nature to the ones specifically listed by Congress. As discussed above, however, he is wrong when he states that would only

include matters that are of a "formal adversarial nature."[9]

Plaintiff also argues that he does not seek to act as an "agent or attorney" for the organizations. The Court disagrees. Plaintiff seeks to attend hearings and meetings on behalf of organizations, and to represent their views to federal agencies in an effort to influence their decisionmaking. This clearly is acting as an "agent." *See Refine Constr. Co. v. United States,* 12 Cl.Ct. 56, 61 (1987) (stating that "agent" in the context of § 205 "is a term of art and is broadly defined as one who is authorized to act for another, or a business representative empowered to bring about contracts. In short, an agent is a person given the authority to speak or act on behalf of someone else."); *United States v. Sweig,* 316 F.Supp. 1148, 1157 (S.D.N.Y.1970) (rejecting defendant's motion to dismiss indictment based on defendant's argument that he was not an "agent" within § 205 in the sense of having "power to affect the legal relations" of the principle, and explaining that "the court deems it best to go no further now than to say that the strict common-law notion of 'agency' does not necessarily exhaust the meaning of the prohibition. On the contrary, the language of the statute and the background materials the parties have cited point to a different and wider meaning."); *see also United States v. Schaltenbrand,* 930 F.2d 1554, (11th Cir.1991) (in context of 18 U.S.C. § 207(a), defendant did not act as an agent where he merely attended a meeting as an employee of a private company, but did not participate in substantive discussions).

Plaintiff's primary argument is that in the context of § 205, acting as an "agent or attorney" should be limited to "legal or quasi-legal" representation. However this interpretation depends on plaintiff's understanding that "covered matters" are limited to formal legal or transactional matters. That argument has been rejected by the Court. Plaintiff also points the Court to the use of the phrase "or otherwise represent" in another conflicts of interest statute, and suggests that if Congress had meant for the representation prohibited by § 205 to include his conduct, it would have included the phrase "or otherwise represent." To read "agent or attorney" to include his conduct, plaintiff argues, is to render the phrase "or otherwise represent" meaningless in the context of the other statute. The Court rejects plaintiff's argument. The phrase "or otherwise represent" might include such things as appearing merely as a consultant for another, or as a witness on behalf of another. These, while falling outside of § 205, would be encompassed by the phrase "or otherwise represent". *See United States v. Coleman,* 805 F.2d 474, (3d Cir.1986) (finding that "or otherwise represent" in context of § 207 was not limited to "professional advocacy" and covered a former federal employee who had attended meetings before an IRS officer but made no comment at all in one and only a brief comment in two others); *see also* Plaintiff's Mem. in Support at 14–15 (quoting *Coleman's* reference to a statement in the legislative history to § 207, that the phrase "agent or attorney, or otherwise represents" were intended to include "appearances in any professional capacity, whether as attorney, consultant, expert witness, or otherwise.").[10]

---

**9.** The Court notes, moreover, that the OGE's definition of "particular matter" has come before Congress, and Congress did not act to change that definition. In 1994, the Office of Legal Counsel (OLC) wrote a memorandum expressing its opinion that § 205 prohibited certain conduct. In doing so, it applied OGE's definition of "particular matter." Specifically in response to that OLC opinion, Congress created an exception to § 205. *See*

§ 205(d)(1)(B); H.R.Rep. No. 104–230 (1995); 18 Op. Off. Legal Counsel 36 (attached as Exhibit 1 to Defendant's Mem. In Support). Congress could have more narrowly defined "covered matter," deleted the phrase "other particular matter," or provided its own definition of "other particular matter." It did not.

**10.** The Court notes that the referenced portions of § 207 were amended significantly in

Finally, the Court is unpersuaded by plaintiff's reliance on legislative history. Plaintiff argues that Congress did not mean to limit volunteerism. Plaintiff's Mem. in Support of Motion at 11. He points to legislative history to support his position, and states that the main purpose of the law was "to continue to regulate formal legal and quasi-legal representation of others by federal employees with regard to claims and proceedings involving the government, while *slightly* broadening the statutory proscription to counteract judicial precedent limiting its application to claims for money or property." *Id.* at 11 (emphasis added). He states that his conduct does not fall within the proscription against acting as an "agent" because he "does not seek the right in this case to provide paid legal or quasi-legal representation to third parties seeking money, property, licenses, or valuable privileges from governmental agencies." *Id.* at 12. Plaintiff may be right regarding what principally motivated Congress; however, the law as enacted is far broader. Congress clearly sought to expand coverage beyond claims for money and property, *see* Senate Report 87–2213, but it did not limit the language of § 205 to representation concerning "valuable privileges." Rather, the language defining "covered matter" is far broader. Further, although plaintiff explains that he "merely" seeks to represent the groups regarding "particular matters of public concern," it is not at all evident why these particular matters do not involve "valuable privileges." He seeks to address matters which in part relate to the acquisition, use, or disposition of property.

Indeed, to the extent that plaintiff wishes to represent the organizations regarding broad policy issues, rather than the interests of identifiable persons, he is not covered by § 205 or the OGE regulations. Moreover, it is clear that Congress intended and recognized that § 205 would encompass more than paid representation, plaintiff's statements regarding volunteerism notwithstanding. *See* 205(d)(1) (specifically excepting *some* unpaid representation). Finally, the legislative history also reflects an intention that the statute be broad and encompassing. *See, e.g.*, S.Rep. No. 87–2213 (1962) ("Section 205 of the bill explicitly goes beyond this restricted class of proceedings and extends its bar against a Government employee's private representational activities to *all matters in which the United States is a party or has an interest.*"). The Court will not carve out exceptions based on plaintiff's belief of what Congress meant the law to prohibit, particularly when that belief is not supported by the statute.

■ In conclusion, plaintiff, an employee of a federal agency, seeks to speak on behalf of organizations, presenting their positions, before federal departments and agencies, with the purpose to influence their decisions regarding particular matters. His actions are encompassed by § 205.[11]

## II. CONSTITUTIONAL VALIDITY

### A. *Applicable Constitutional Standard*

■ It is well established that individuals do not lose their First Amendment

1989. The language "or otherwise represents" no longer appears in § 207(b).

11. Plaintiff urges the Court to apply the rule of lenity and thereby to construe § 205 narrowly. However, the rule of lenity applies where the statutory language is severely ambiguous or uncertain. *See Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 1919, 141 L.Ed.2d 111 (1998) (stating that "[t]he simple existence of some statutory ambiguity . . . is not sufficient to warrant application of [the 'rule of lenity'] . . . . The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.") (internal citations and quotations omitted); *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001–02 (1990). Here, plaintiff's proposed conduct clearly is encompassed by the statutory language, and the Court's interpretation of the statute surely is based on more than a mere "guess" as to Congress's intentions. The rule of lenity therefore does not apply.

rights when they accept employment with the federal government. *See Sanjour v. Environmental Protection Agency,* 56 F.3d 85, 90, 312 U.S.App. D.C. 121, 126 (1995). Generally, when determining the constitutionality of a restraint on the speech of government employees, the Court must balance the interests of the employee, as a citizen, in commenting on matters of public concern, and the interests of the government, as an employer, in promoting the efficiency of public service. *Id.* at 90, 56 F.3d 85, 312 U.S.App. D.C. at 126 (quoting the balancing test set forth in *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)). The Supreme Court has refined this standard as it applies to prospective statutory restrictions on expression. *See United States v. National Treasury Employees Union ("NTEU"),* 513 U.S. 454, 468, 115 S.Ct. 1003, 1014, 130 L.Ed.2d 964 (1995) (determining that the government's burden is greater with respect to statutory restrictions that chill potential speech before it happens than with respect to isolated disciplinary actions).

▮▮▮ Defendants initially argue that § 205 regulates conduct, not speech, and therefore does not implicate the First Amendment. Defendants' Mem. in Support of Motion at 17. Defendants argue that plaintiff "is free to join any organization and represent the organizations' views to private individuals, private entities, state or local governments, or any other non-federal individual or entity" and that he is "even free to assist the person who represents an organization before the federal government in preparing the organization's statements." Defendants' Mem. in Support of Motion at 19. Moreover, defendants argue, plaintiff remains free to say on his own behalf the very same things he would otherwise say on behalf of the organizations. Thus, no speech goes "unsaid."

That the challenged restriction does not directly prohibit speech does not mean the First Amendment is not implicated. In *NTEU,* the Supreme Court addressed the constitutionality of provisions of the Ethics Reform Act of 1989 that broadly prohibited federal employees from accepting any compensation for making speeches or writing articles. The Court found that "[al]though [the honoraria ban] neither prohibits any speech nor discriminates among speakers based on the content or viewpoint of their messages, its prohibition on compensation unquestionably imposes a significant burden on expressive activity," and that the ban "induces [employees] to curtail their expression if they wish to continue working for the Government." *NTEU,* 513 U.S. at 469, 115 S.Ct. at 1014. The Court called this "large scale disincentive" to employee speech "the kind of burden that abridges speech under the First Amendment." *Id.* at 470, 115 S.Ct. at 1015. Indeed, even the dissent in *NTEU,* after emphasizing that the ban neither prohibited anyone from speaking or writing, nor penalized such expression, recognized that the ban did implicate First Amendment concerns and that to the extent it did so, the Pickering line of cases provide the appropriate standard. *Id.* at 490–91, 115 S.Ct. at 1024 (Rehnquist, C.J., dissenting).

Similarly, appellants in *Sanjour v. Environmental Protection Agency,* 56 F.3d 85, 312 U.S.App.D.C. 121 (1995) (in banc), challenged EPA regulations prohibiting employees from receiving travel expense reimbursement from private sources for unofficial speaking or writing engagements. Although the restrictions did not directly prohibit any speech, the D.C. Circuit found that the challenged regulations "clearly prevent[ed]" employees from addressing certain issues, "proscribing a broad category of speech," and that the *Pickering* balancing test clearly was applicable. *Sanjour,* 56 F.3d at 91, 312 U.S.App.D.C. at 127. The court proceeded to apply the *Pickering* test, guided by the Supreme Court's decision in *NTEU. Sanjour,* 56 F.3d at 91, 312 U.S.App.D.C. at

127 (finding the "Pickering/NTEU" test to be the applicable standard); *see also Sanjour*, 56 F.3d at 100, 312 U.S.App.D.C. at 136 (Sentelle, J., dissenting) (agreeing with majority that *Pickering* is the appropriate standard against which to measure the challenged restriction).

Defendants distinguish this case from *NTEU* and *Sanjour*, arguing "that the restrictions on speech at issue in those cases are different in kind, scope, and effect from the restriction on representation under § 205(a)(2)." Defendants' Mem. in Support of Motion at 18. They argue that this case does not call for the balancing employed by the courts in *NTEU, Sanjour*, and *Pickering*, because the premise that the government has restricted speech on matters of public concern is inapplicable. Defendants' Mem. in Support of Motion at 18. Defendants do not challenge that the speech would not relate to matters or public concern, but do maintain that no speech goes unuttered and that no association goes unjoined as a result of § 205.

The Court rejects defendants' position that the First Amendment is not implicated because no speech is restricted. As in *NTEU* and *Sanjour*, § 205 and the OGE regulations at issue in this case deter speech. In a variety of ways, the challenged provisions impose a "burden" on speech and induce employees to "curtail their expression." Plaintiff wishes to impact federal policy and has greater incentive to speak when he speaks on behalf of a large number of people, rather than for himself. Defendants discount this interest by arguing strenuously that plaintiff does not have a right to "enhanced speech" or to be persuasive, and argue that plaintiff is asking this Court to create a new constitutional right to "associational speech." However, that plaintiff may not have a constitutional right to represent a group in the manner he chooses does not mean that the challenged regulations do not curtail speech if they result in plaintiff not speaking because he has lost his incentive.[12] The courts in *NTEU* and *Sanjour* did not focus on whether plaintiff's in those cases had constitutional rights to be paid to speak. Again, in those case, as in this case, the employees could continue to say whatever they chose. However the regulations in those cases, and § 205 here, discourage speech by undermining the motive and opportunity for the speech.

A recent Fifth Circuit case also illustrates this point. In *Hoover v. Morales*, 164 F.3d 221 (5th Cir.1998), the court struck down two Texas state policies that prohibited state employees from acting as consultants or expert witnesses on behalf of parties opposing the State in litigation. The court first rejected an argument that the case involved only commercial speech because the employees would be paid. *Hoover*, 164 F.3d at 225. The court went on to apply the *Pickering/NTEU* balancing test despite the fact that the right at issue was defined specifically as "the right to serve as (pro bono) or be retained as (for hire) an expert witness or consultant in

---

**12.** In any event, the cases relied upon by defendants are distinguishable. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979) and *Minnesota State Bd. v. Knight*, 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984), arose in the context of closed governmental proceedings, and specifically, in the context of labor relations and dispute resolution processes. The cases establish that the government has no obligation to listen to any group or individual when it makes policy decisions. This case is different, however. Here, the government is not generally limiting access to certain procedures. It is singling out government employees and dictating the manner in which they may address federal agencies. The government here is not telling organizations they may not participate in a closed process, but effectively limiting the way these organizations may present their views. *Palestine Information Office v. Shultz*, 853 F.2d 932, 272 U.S.App.D.C. 1 (1988), also cited by defendants, involved a State Department's order directing the Palestine Information Office to cease operating as a foreign mission of the Palestinian Liberation Organization, based on the national interest in curbing international terrorism. That case is hardly dispositive of plaintiff's claims.

litigation against the State ... or when doing so would create a 'conflict of interest' with the State." *Id.* at 226. The Court applied the balancing test despite the fact that employees were free to express the same opinions in other contexts and that the litigants could have hired other experts or consultants. Certainly, federal employees have no more a constitutional right to act as an expert witness, to receive an honoraria for the speech, or to be reimbursed for their travel, as does plaintiff to speak freely on behalf of an organization.

One important way in which speech in this case may be curtailed is by the interplay of § 205 and the OGE regulations regarding appearances of impropriety. Plaintiff has indicated in an affidavit that he has not spoken even on his own behalf, for fear that he will unwittingly appear to violate § 205. *See* Affidavit of Jeffrey van Ee, attached as Exhibit 1 to Mem. in Support of Motion, ¶ 9. This was not an unreasonable fear. The government maintains that plaintiff can remain active in the various organizations, and indeed maintain positions of leadership within those organizations, and that he may attend meetings and speak on his own behalf. However, in a revealing colloquy at oral argument in this case, counsel for the government revealed that the government's proposition is, at times, a bit tenuous:

> THE COURT: ... Let's say there's a hearing before the agency, all right? And there are three or four groups, including one of the groups that he would like to "represent," ... [Plaintiff] explains his position in a very articulate way, he makes exactly the type of argument he would have made if he were representing the agency. Then he sits down, and the agency ... representative stands up and indicates, "we adopt everything the plaintiff has said, good or bad."
>
> ...
>
> He represents himself as being there in his private capacity.

> COUNSEL: And he is in fact there in his private capacity?
>
> THE COURT: What do you mean, "he is in fact there in his private capacity"?
>
> COUNSEL: In other words—if the organization outside said to him, "listen, we want you to speak on our behalf. You're our guy. But go in there and start off by saying, 'I'm here on my own behalf.'" In other words, there is an intent element. If he goes there and he's there on his own behalf, he's not there as their representative, and he says, "this is what we should do, A, B, C, and D," and the organization—but he's there on his own behalf. The organization gets up and says, "this is what you should do, Bureau of Lands Management, A, B, C, D, we agree with him," he hasn't violated section 205.
>
> ...
>
> THE COURT: So you're saying, then, that he's free to go there, and he's free to make any comment he's making as long as he states he's representing himself?
>
> COUNSEL: He is free—what the statute prohibits him is from representing the organization. Your honor, all I'm trying to do is cover the situation where he's lying, and he is there as their representative.
>
> THE COURT: Where he is what?
>
> COUNSEL: Where he is there as their representative. If there's no other evidence than what you've provided, then there's no section 205 violation.

Transcript at 37–38, 40. It is certainly possible, at the least, that plaintiff, or others like him, would be disposed either to refrain from speaking or to restrict their involvement in the organizations, rather than to risk criminal and/or disciplinary repercussions. The Court thus rejects that no speech is deterred by § 205 and the OGE regulations. Whether the deterrence on speech is as great in this case as it was in *NTEU* and *Sanjour*, and how the

competing interests balance in this case, will be considered below.

For the reasons discussed above, the Court finds that § 205 and related OGE regulations implicate the First Amendment and that the appropriate standard against which to test these restrictions is the *Pickering/NTEU* balancing test.

### B. *Pickering/NTEU Balancing*

■ The Court must balance plaintiff's interests in commenting upon matters of public concern, against the government's interest as employer in promoting the efficiency of its public services. *See Sanjour*, 56 F.3d at 91, 312 U.S.App.D.C. at 127; *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35. Because the restriction at issue in this case is a prospective statutory restriction on speech, the government's burden is greater than it is with respect to isolated disciplinary actions. *NTEU*, 513 U.S. at 468, 115 S.Ct. at 1014. "The government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the government." *NTEU*, 513 U.S. at 468, 115 S.Ct. at 1014 (quoting *Pickering*, 391 U.S. at 571, 88 S.Ct. at 1736); *Sanjour*, 56 F.3d at 91, 312 U.S.App.D.C. at 127.

#### 1. *Interests of Plaintiff, Other Employees, Organizations, and the Public*

In weighing plaintiff's interests, the Court also must consider the interests of other employees, of the affected organizations, and of the public. *See Sanjour*, 56 F.3d at 91, 92, 312 U.S.App.D.C. at 127, 128 (noting that the "facial"/"as-applied" distinction is for the most part irrelevant to the *Pickering/NTEU* analysis, which "requires the Court to go beyond the facts of the particular case before it"); *NTEU*, 513 U.S. at 468, 115 S.Ct. at 1014 ("government must show that *the interests of both potential audiences and a vast group of present and future employees* in a broad

range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the government").

Plaintiff's interest lies in his desire to represent organizations before federal agencies about matters unrelated to his work. Plaintiff argues he has the right to speak on behalf of others who share his views, and that the ability to do so is inseparable from his right freely to associate. Plaintiff's Mem. in Support of Motion at 25. Plaintiff emphasizes his view that communications on behalf of groups are more effective than communications in his individual capacity. *Id.* at 29. Moreover, plaintiff argues that he and the organizations he wishes to represent are severely harmed by § 205 because plaintiff is often the person most qualified to represent these groups before the federal government. *Id.* at 28.

Plaintiff's interests must be understood in the context of the limitation imposed by § 205. Plaintiff remains free to speak to federal agencies on his own behalf regarding the same issues he would otherwise address on behalf of the organizations; he may join any private organization he wishes and continue to maintain leadership positions, and otherwise actively participate, in the organizations; plaintiff is free to represent the organizations in forums other than the federal government, such as state and local government, the media, and the general public; plaintiff is free to aid the organizations in the preparation of statements or other representations to federal agencies.

Understood in this context, the harm imposed on plaintiff is limited. He is not prohibited from representing organizations under all circumstances, only before federal agencies. Understandably, this is a significant concern to plaintiff under the circumstances, because the federal government owns over 80% of the land in Nevada. Nevertheless, even before federal agencies, plaintiff may express his own views, and he may assist the organizations'

representatives in the preparation of their remarks. Plaintiff indicates that assisting others is not always sufficient because some of the communications are interactive, and as he is often the person most knowledgeable about the issues, it would be more productive for him to be able to engage in discussion. Again, plaintiff may engage in these interactive discussions. He simply cannot do so on behalf of the organizations. It is clear that a number of organizational leaders consider plaintiff to be the best person to address a variety of issues on their behalf. *See* Affidavits attached to Plaintiff's Mem. in Support of Motion. Even with respect to these interests, however, plaintiff may assist in a variety of ways, either by assisting an organization's representative, or by presenting his own views, from which the organizations clearly would benefit ultimately by having plaintiff's expertise before the agency, or by doing both.

A comparison to the concerns and restrictions at issue in *NTEU* and *Sanjour* is instructive. The disincentive to speech in those cases was far greater than that imposed here. In *NTEU*, the Court was concerned that denying compensation for lower paid employees would "inevitably diminish their expressive output." 513 U.S. at 470, 115 S.Ct. at 1014–1015. In *Sanjour*, the Court determined that denying employees the ability to recover necessary travel expenses was even greater a burden that the honoraria ban considered in *NTEU*. 56 F.3d at 94, 312 U.S.App.D.C. at 130. Unlike the restrictions in *NTEU* and *Sanjour*, § 205 makes speech neither more expensive nor less remunerative. *See Sanjour*, 56 F.3d at 94 n. 11, 312 U.S.App. D.C. at 130 n. 11. Although plaintiff, and others, may, as discussed above, be somewhat deterred from speaking if they cannot speak in the way they deem most effective, § 205 does not impose prohibitive conditions on speech. In *Sanjour* there clearly was the concern that at least some employees, particularly those who were lower paid employees, would not be able to engage in certain speech if they were not at least reimbursed for their travel. In *NTEU*, the Court emphasized that the compensation itself was a significant motivator to the speech at issue. *See NTEU*, 513 U.S. at 469, 115 S.Ct. at 1014. Here, the ability to voice the concerns of others is only one potential motivating factor. Clearly, plaintiff has an interest in expressing his views on issues with respect to which he has significant expertise and long-standing interest. Indeed, plaintiff's own affidavit makes clear that he would continue to speak even if he could not do so on behalf of the organizations:

> During recent years, pursuant to the guidelines set by [OGE], I have refrained from communicating to other federal agencies on behalf of the Nevada groups and have tried to avoid "creating the appearance" that I was communicating on behalf of any group regarding a particular matter of public concern. *As a result, when I have communicated to other agencies regarding matters of public concern, I have commented only on my own behalf.*

Affidavit of Jeffrey van Ee, attached as Exhibit 1 to Plaintiff's Mem. in Support of Motion, ¶ 9 (emphasis added); *cf. NTEU*, 513 U.S. at 469 n. 15, 115 S.Ct. at 1014 n. 15 (noting that "[s]everal respondents indicated that the ban would compel them to discontinue their previously compensated activities," and that in one case, "a newspaper refused to continue publishing a respondent's work if he could not accept pay for it"). Plaintiff does add that he has spoken less frequently than he otherwise would have, because he was concerned that he would be perceived, wrongly, as representing the groups, and because he does not believe it would be as persuasive or effective to state his own views. *Id.* As to plaintiff's first concern, the government has now assured this Court, and the Court understands the government's position to be, that as long as plaintiff indicates he is speaking on his own behalf, he need not curtail his speech for fear of violating, or appearing to violate, § 205. Further, al-

though § 205 might make certain speech less attractive, because it is perceived to be less persuasive, it does not make it more difficult or burdensome, as did the restrictions in *NTEU* and *Sanjour*.

Importantly, also, to the extent § 205 does provide a disincentive to speech, that disincentive is limited to one audience, the federal government. In both *NTEU* and *Sanjour*, the disincentives caused by the restrictions were broader—if an employee could not receive an honoraria for his speech or could not be compensated for her travel to a speaking engagement, the disincentive is the same regardless of the potential audience. Here, however, to the extent that § 205 creates a disincentive because an employee is less likely to speak if he cannot represent a group, that disincentive operates only to the extent the employee seeks, in a representational capacity, to engage the federal government. The government is restricting the manner in which plaintiff may speak to it, not to the rest of the public. Thus, although the Court recognizes that the limitations imposed by § 205 may deter some speech, that deterrence is related to one of a number of potential audiences.

The extent of the disincentive is important in another respect. Potential audiences will be deprived of far less insight from plaintiff and other federal employees than they would have been under the bans considered by the courts in *NTEU* and *Sanjour*. In *NTEU*, the Court noted that "[f]ederal employees who write for publication in their spare time have made significant contributions to the marketplace of ideas," and understood that with respect to at least some employees, their publication activity would have to cease completely if they could not be compensated for it. *See NTEU*, 513 U.S. at 464, 469 n. 15, 115 S.Ct. at 1012, 1014 n. 15. Similarly, in *Sanjour*, the Court recognized the ban on reimbursement for expenses to be a significant "impediment to [employees'] attempts to publicize their views." *Sanjour*, 56 F.3d at 94, 312 U.S.App.D.C. at 130.

Under the burdens imposed by those regulations, the speech would, at least potentially, go completely unexpressed. Here, however, very little, if any, speech need go unexpressed, because employees remain free to represent their own views to the federal government, and any views they wish to whomever else they choose. The public, indeed even the federal government, can hear plaintiff's insights to the extent he speaks on his own behalf; if he chooses not to do so, he can contribute his expertise in the preparation of the statements of others.

### 2. *Interests of the Government*

In weighing the government's interests, the Court looks to the articulated concerns. *See Sanjour*, 56 F.3d at 96, 312 U.S.App.D.C. at 132. The government here argues that "[s]ection 205 is the product of Congress, the executive branch, and private commentators grappling for over 150 years with the conflicts inherent in a federal employee representing private individuals or entities before the very government that employs her." Defendants' Mem. in Support of Motion at 28. Defendants maintain that Congress enacted § 205 to ensure that the government's resources are distributed on the basis of need and deservedness, rather than undue influence or favoritism. Defendants' Mem. in Support of Motion. Regardless of the employee's intent, according to defendants, the decision-maker may accord the employee more favorable treatment and the employee's representation may create an appearance of impropriety, because "[i]t would not be unreasonable for an outsider to presume that the federal employee would get favorable treatment or a quicker response because of her status as a federal employee." Defendants' Mem. in Support of Motion at 29.

The entire history of § 205 will not be set forth herein. Suffice it to say that prior to 1962 amendments to the conflicts of interests laws, the predecessor statute to § 205 had been construed to apply only

to activities related to claims for money or property. Section 205 expanded that coverage to include a far broader range of representational conduct. Few courts have had the opportunity to address § 205. Those that have, including the D.C. Circuit, have focused on two purposes underlying § 205—preventing the use of inside information by government employees to assist private interests, and protecting the integrity of governmental processes. *See United States v. Bailey*, 498 F.2d 677, 162 U.S.App.D.C. 135 (1974); *DeMarrias v. United States*, 713 F.Supp. 346 (D.S.D. 1989); *see also* Carolyn Elefant, *When Helping Others is a Crime: Section 205's Restriction on Pro Bono Representation by Federal Attorneys*, 3 Geo. J. Legal Ethics 719, 723–724 (1990) (quoting a 1960 House Report for proposition that "[t]here is a clear public interest in preventing government employees from allying themselves actively with private parties in the multitude of matters and proceedings in which, although they may not be claims against the United States, the government has a direct and substantial interest," and further noting that commentators also criticized § 283's inadequate protection against the appearances of impropriety). The Supreme Court has recognized the important concerns of avoiding appearances of conflicts and upholding confidence in the integrity of governmental processes. *See Crandon v. United States*, 494 U.S. 152, 164–65, 110 S.Ct. 997, 1005, 108 L.Ed.2d 132 (1990). Prohibiting government employees from representing private individuals and entities in their dealings before the government clearly furthers the government's interests in avoiding actual and apparent conflicts of interests.

The Court is mindful that the government has not identified its interests as specifically as it might have. Moreover, § 205 is not as narrowly drawn to specific harms as it could be. The applicable standard is a balancing test, however, and the Court must weigh the government's interests against the interest that plaintiff has in representing others before the federal government. In light of the limited impact on the quality and quantity of speech in which plaintiff and others may engage, the government's stated interests weigh heavily. *Cf. Sanjour*, 56 F.3d at 98, 312 U.S.App.D.C. at 134 ("Although we do not suggest that the Pickering test contains a 'least restrictive means' component, we believe that the extraordinary reach of the challenged regulations places a heavy justificatory burden on the government—or put another way, the great quantity of speech affected by the regulatory scheme weighs heavily on the side of the employees."). It is certainly conceivable that Congress could have tailored § 205 more narrowly. However it is not as simple a task as it might first appear. For example, although concerns of improper appearances would be greatest if an employee were to address his own agency, which plaintiff emphasizes he does not seek to do, the interests addressed by agencies surely are not exclusive. There can be little doubt that the EPA, for example, has particular interest in matters that come before the Departments of Energy and of the Interior. Moreover, although appearances of impropriety surely are greater if audience members are aware that the speaker is a federal employee, such a test cannot practically be worked into a statute. Finally, perhaps Congress could have limited the statute to certain employees in positions of some level of influence. Such a decision, however, is rightfully left to Congress.

### 3. *Other Considerations*

The Court notes that a number of concerns that plagued the restrictions at issue in *NTEU* and *Sanjour* are not concerns here. In both cases, the courts expressed concerns regarding features of the law which "cast serious doubt" on the government's stated interests. *See NTEU*, 513 U.S. at 473–74, 115 S.Ct. at 1016–17. *Sanjour*, 56 F.3d at 95–96, 312 U.S.App. D.C. at 131–32. None of the limited exceptions in § 205 so undermines the stated

purposes of the act so as to render them suspect, and neither does the scope of its coverage.

Another important concern of the Court in *Sanjour* was that the restrictions at issue there "in practice ... almost certainly restrict a subcategory of such speech on the basis of the viewpoint expressed." *Sanjour*, 56 F.3d at 96, 312 U.S.App.D.C. at 132. In *Sanjour* this resulted because employees could be reimbursed by private sources only for officially sanctioned speaking engagements, which in turn had to be consistent with the mission of the agency. *Id.; see also Hoover*, 164 F.3d at 227 (stating that an additional basis for the court's decision to enjoin enforcement of the policies was that they drew a distinction between those who acted on behalf of the state and those who acted contrary to the state). The restriction imposed by § 205 applies equally whether plaintiff intends to represent positions that are in line with, or contrary to, current governmental policies and positions.

After considering the competing interests, the Court determines that § 205 is a permissible restriction on plaintiff's conduct. The Court has some concern regarding the scope of the prohibition. Nevertheless, when the limited restriction on plaintiff's speech is weighed against Congress's authority and responsibility to address the significant concerns raised by the harm to the integrity of governmental processes caused by federal employees representing the interests of private entities in their dealings with the federal government, the government's interests prevail. The Court emphasizes, however, its understanding of the scope of the limitation imposed by § 205: plaintiff may communicate any views he wishes on his own behalf (subject perhaps to other ethics considerations) before any federal agency; he may join any organization he chooses; he may serve in positions of leadership in any organizations he desires; he may assist organizations in their preparation of statements to be communicated to federal agencies; he may represent the positions of the organizations in any non-federal forum; he may represent the views of organizations before federal agencies, so long as he addresses only broad policy matters. *See* Defendants' Reply in Support of Motion at 15. Moreover, based on a review of the correspondence between plaintiff and the EPA's Office of General Counsel, as well as the oral argument in this case, all plaintiff must do in order to avoid an appearance of impropriety where he reasonably believes one might exist, is to state that he is representing his own views. (Plaintiff, of course, must not take any steps to create an appearance of representation, such as by submitting his statements on organizational letterhead.) Other speakers, even if they are from the very organizations in which plaintiff is an officer, may join in his statements. Based on this understanding of the scope of § 205 and OGE regulations, the Court deems them to be permissible restrictions.

## III. THE APPEARANCE PRINCIPLE

Plaintiff argues that even if the Court determines that § 205 applies to his conduct and is constitutional, he cannot permissibly be punished merely for "appearing" to violate that section. Plaintiff's Mem. in Support of Motion at 33. Such an application, plaintiff argues, would be far too vague. *Id.* The Court rejects plaintiff's argument. The Supreme Court has made clear that Congress has an interest in regulating, and the authority to address, appearances of impropriety. *See, e.g., Crandon*, 494 U.S. at 164, 110 S.Ct. at 1005 ("Congress appropriately enacts prophylactic rules that are intended to prevent even the appearance of wrongdoing and that may apply to conduct that has caused no actual injury to the United States.... Legislation designed to prohibit and to avoid potential conflicts of interest in the performance of governmental service is supported by the legitimate interest in maintaining the public's confidence in the integrity of the federal service."). More-

over, the government has made clear to plaintiff the limited steps he must take to be sure to avoid an appearance of impropriety.

### CONCLUSION

For the reasons set forth in this memorandum, the Court concludes that § 205 applies to plaintiff's proposed conduct and that its application is constitutional. Accordingly, **Plaintiff's Motion for Summary Judgment** will be denied, and **Defendants' Motion for Summary Judgment** will be granted. An appropriate order accompanies this memorandum.