## UNITED STATES v. BOOTH.

(Circuit Court, D. Oregon. July 18, 1906.)

No. 2,942.

1. UNITED STATES—CRIMINAL RESPONSIBILITY OF OFFICERS—RECEIVING COMPENSATION FOR SERVICES TO PERSON.

The provision of Rev. St. § 1782 [U. S. Comp. St. 1901, p. 1212], making it unlawful for any officer in the employ of the government to "receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered or to be rendered to any person either by himself or another in relation to any proceeding * * * or other matter or thing in which the United States is a party or directly or indirectly interested before any department, court-martial, bureau, officer or any civil, military or naval commission whatever," applies to a receiver of a land office in respect to matters before his own office or which may come before it for his action thereon either judicial, executive, or merely clerical, and without regard to the question whether the service rendered or to be rendered is proper or improper, and a receiver commits an offense under said section by receiving compensation for giving advance information to the person paying the same of the restoration of lands to the public domain through the action of the Land Department, which lands thereby become subject to entry by means of scrip or otherwise in his district.

2. SAME—MATTER IN WHICH UNITED STATES IS INTERESTED—PUBLIC LANDS.

The United States has a direct interest, within the meaning of Rev. St. § 1782 [U. S. Comp. St. 1901, p. 1212], in all its public lands and in the right of entry or purchase thereof through proceedings to be had at any of its land offices.

On Demurrer to Indictment. The following is the indictment demurred to:

"District of Oregon—ss.:

"The grand jurors for the United States of America, inquiring for the district of Oregon, upon their oath present that before and at times of the committing of the offense hereinafter in this indictment mentioned, that Frederick A. Kribs was engaged in the business of scripping divers tracts of public lands belonging to the United States and lying in the Roseburg land district, in the state and district of Oregon aforesaid, under the laws of the said United States relating to the selection of lieu lands, and of procuring such public lands of the United States by filing in the land office of said United States, in the said land and judicial districts, certain paper writings required by law to be filed therein by any person making application to exchange other lands of which he was then and there the owner for such public lands of the United States. And that before and at the time of committing the offense hereinafter in this indictment mentioned, said James Henry Booth was the duly appointed, qualified and acting receiver for the United States at and for the district of lands of the United States subject to entry at the United States Land Office located at the city of Roseburg, in said district of Oregon, and as such receiver was in a position to know, and did know, in advance of the general public, and in advance of all parties desiring or authorized to acquire, purchase or scrip the same, under the laws of the United States, when certain public lands of the United States became open to entry under the laws thereof, by reason of the fact that prior selections and entries of said lands had been finally rejected and canceled by the proper officer of the United States possessing authority to conclusively determine that question, and which said public lands of the United States upon which prior entries had so been rejected and canceled were located in the Roseburg land district of the United States, in said district of Oregon; and that the said Frederick A. Kribs, contriving and intending to secure an advantage and pref-

erence over all other persons, who might desire to enter any tract or tracts of said public lands so becoming open to entry by purchase, settlement and scripping, by reason of the rejection and cancellation of prior entries thereon, and so lying within said Roseburg land district of the United States, by unlawfully inducing and procuring the said James Henry Booth, as receiver of said land office, to wrongfully, and contrary to his, the said James Henry Booth's, duty as such receiver of said United States Land Office, advise and inform said Frederick A. Kribs, in advance of all other persons, who might desire to enter the same under the laws of the United States, by purchase, settlement or scripping, when any tracts of public lands belonging to the United States, and lying within said Roseburg land district of the United States, would become open to entry by purchase, settlement and scripping, by reason of the rejection and cancellation of prior entries thereof, had secured and accepted for himself, the said Frederick A. Kribs, and had contracted for the services of said James Henry Booth, and had agreed to pay for the same, and these services had been rendered in part, and were to be rendered in part, to him by said James Henry Booth, in giving the aforesaid information to said Frederick A. Kribs, in advance of all other persons, who might be desirous of knowing, and entitled to know, the same; and that the said James Henry Booth did before and at the time of the committing of the offense hereinafter in this indictment mentioned, and within three years last past, give to said Frederick A. Kribs information in advance of all other persons, of the fact that certain public lands of the United States lying within said Roseburg land district of the United States, had become open to entry, by purchase, settlement and scripping, under the land laws of the United States, by reason of the fact that prior entries thereof had been rejected and canceled by the proper officers of the United States, possessing authority to conclusively and finally determine that question, and that said James Henry Booth, when so rendering and agreeing to render the said service to the said Frederick A. Kribs, well knew that the said United States was then directly interested in said public lands so becoming open to entry, and in the proceedings, claims, matters and things in which the said James Henry Booth was then so rendering and agreeing to render the said service to the said Frederick A. Kribs.

"And the grand jurors aforesaid, upon their oath aforesaid do further present that the said James Henry Booth, on the fifth day of October, 1903, at and in the said district of Oregon and during his continuance in office as such receiver of the United States for said Roseburg land district of the United States, unlawfully did receive certain compensation from the said Frederick A. Kribs, that is to say, eight hundred dollars, for the services so rendered, and to be rendered, by him to the said Frederick A. Kribs, as aforesaid, in relation to certain of the public lands of the United States, and proceedings, claims, matters and things aforesaid, in which the said United States was directly interested, and thereby the said James Henry Booth did then and there offend against section seventeen hundred and eighty-two of the Revised Statutes of the said United States [U. S. Comp. St. 1901, p. 1212]; against the peace and dignity of the said United States, and contrary to the form of the statute of the same in such cases made and prepared.

"Dated at Portland, Oregon, this eighth day of April, 1905.
"Francis J. Heney,
"United States Attorney District of Oregon.
"W. H. H. Wade,
"Foreman of U. S. Grand Jury.

"Witnesses sworn and examined before the grand jury: Frederick A. Kribs.
"A true bill.       W. H. H. Wade, Foreman of the Grand Jury.
"Filed April 8, 1905.       J. A. Sladen,
"Clerk U. S. Circuit Court District of Oregon."

Francis J. Heney, Special Assistant to the Attorney General.
A. C. Woodcock and Lionel R. Webster, for defendant.

148 F.—8

HUNT, District Judge. The demurrer is general, so that the question for decision is: Does the indictment state facts which constitute a crime under section 1782, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1212]? If there are objections which may be available to the defendant by way of defense on the trial only, they are not to be considered now. Nor are mere defects of form involved, unless they so affect the substance of the pleading as to make the whole indictment fatally defective. The statute under which the indictment is drawn reads as follows:

"No Senator, Representative, or delegate, after his election and during his continuance in office, and no head of a department, or other officer or clerk in the employ of the government, shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered, or to be rendered, to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter or thing in which the United States is a party, or directly or indirectly interested, before any department, court-martial, bureau, officer, or any civil, military, or naval commission whatever. Every person offending against this section shall be deemed guilty of a misdemeanor, and shall be imprisoned not more than two years, and fined not more than ten thousand dollars, and shall, moreover, by conviction therefor, be rendered forever thereafter incapable of holding any office of honor, trust, or profit under the government of the United States."

Now, let us see what this indictment charges.

The allegation is plain that, about October 5, 1903, Frederick A. Kribs was engaged in the business of scripping divers tracts of the public lands, belonging to the United States, lying in the Roseburg land district, within the state of Oregon, and that the scripping was being done, under the laws of the United States relating to the selection of lieu lands and of procuring such public lands, by filing in the land office of the United States, in the Roseburg land district, certain paper writings required by law to be filed by any person making application to exchange other lands, of which he was then and there the owner, for such public lands of the United States. It is next charged that, before and at the time of committing the offense alleged in the indictment, to wit, October 5, 1903, the defendant, James Henry Booth, was the duly-appointed, qualified, and acting receiver for the United States, for the district where the lands of the United States were subject to entry at the land office at the city of Roseburg, in the state of Oregon. It is also plainly averred that, as such receiver, Booth was in a position to know, and did know, in advance of the general public, and in advance of all parties desiring or authorized to acquire, purchase, or scrip the same under the laws of the United States, when certain public lands became open to entry by reason of the fact that prior selections and entries of said lands had been finally rejected and canceled by the proper officer of the United States, possessing authority to determine that question conclusively, and which said public lands of the United States upon which prior entries had been so rejected and canceled were located in the Roseburg land district.

It is also sufficiently well alleged that Frederick A. Kribs, contriving and intending to secure an advantage over all other persons who

might desire to enter any tract or tracts of said public lands so becoming open to entry by purchase, settlement, and scripping, by reason of the rejection and cancellation of prior entries thereon, so lying within the Roseburg land district, by unlawfully inducing and procuring the said Booth, receiver, wrongfully and contrary to his (Booth's) duty as such receiver, to advise and inform Kribs, in advance of all other persons who might desire to enter the same, under the laws of the United States, by purchase, settlement, or scripping, when any tracts of public lands lying within the Roseburg land district would become open to entry by purchase, settlement, and scripping, by reason of the rejection and cancellation of prior entries thereof, had secured and accepted for himself (Kribs), and had agreed to pay for the same, and these services had been rendered in part, and were to be rendered in part, to him (Kribs) by Booth, by giving the aforesaid information to Kribs in advance of all persons who might be desirous of knowing, and entitled to know, the same. It is next charged that, before and on October 5, 1903, Booth, the defendant, did give to Frederick A. Kribs information in advance of all others of the fact that certain public lands of the United States within the Roseburg land district had become open to entry, by purchase, settlement, and scripping, under the land laws of the United States, by reason of the fact that prior entries thereof had been rejected and canceled by the proper officers of the United States, who had authority to determine that question finally. It is also averred that Booth, when so rendering and agreeing to render the said service to the said Kribs, well knew that the United States was then directly interested in the said public lands so becoming open to entry, and in the proceedings, claims, matters, and things in which the said Booth was then so rendering and agreeing to render the said services to the said Kribs.

Next follows a direct and positive charge that, on the 5th of October, 1903, Booth, the defendant, in the district of Oregon, and during his continuance in office as receiver of the Roseburg land district, unlawfully did receive certain compensation from the said Kribs—that is, $800—for the services so rendered and to be rendered by him to the said Kribs, as aforesaid, in relation to certain of the public lands of the United States, and proceedings, claims, matters, and things aforesaid, in which the said United States was directly interested; and thereby the said Booth offended against section 1782 of the Revised Statutes of the United States.

A careful reading of the several opinions of the justices of the Supreme Court in Burton v. United States (decided May 21, 1906) 26 Sup. Ct. 688, 50 L. Ed. 1057, discloses that the framers of the statute under consideration had in mind the enactment of a law to secure honesty of executive acts. To help attain this object it is made a crime for government officers to agree to receive compensation, or to receive it, for services rendered or to be rendered in the matters embraced within the statute. Justice Harlan, considering the law in its relation to members of Congress, said:

"Evidently the statute has for its main object to secure the integrity of executive action against undue influence upon the part of members of that branch of the government, whose favor may have much to do with the ap-

pointment to, or retention in, public position of those whose official action it is sought to control or direct. The evils attending such a situation are apparent, and are increased when those seeking to influence executive officers are spurred to action by hopes of pecuniary reward. There can be no reason why the government may not, by legislation, protect each department against such evils, indeed, against everything, from whatever source it proceeds, that tends or may tend to corruption or inefficiency in the management of public affairs."

But, while one of the principal purposes of the statute was to prevent influence upon the part of members of that branch of the government whose favor may have much to do with the appointment of certain officials in public position, yet the scope of the statute is even wider than that. Eliminating the particular words referring to Senators, Representatives, or delegates, and to heads of departments, we still find that it is unlawful for any officer or clerk in the employ of the government to receive, or agree to receive, any compensation whatever, directly or indirectly, for any service rendered or to be rendered, to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, or other matter or thing, in which the United States is directly or indirectly interested, before any department, court-martial, bureau, officer, or any civil, military, or naval commission whatever. In this language there is no restriction limiting the operation of the law to those who may hold higher positions, as Senators, Representatives, or heads of departments.. Any officer—any clerk, no matter how subordinate may be his clerical position, if he be in the employ of the government—is expressly included, and forbidden to do those things which are made unlawful by the comprehensive language of the law. Congress proceeded evidently in recognition of the principle that "No man can serve two masters," and that it was not right that an officer should agree to accept fees for doing services in matters where the United States is interested, before any officer of the government. The performance of duty by an officer is compensated by the salary or fees regularly allowed by law. To permit agreements for other compensation for services, to be paid by those interested in matters before government officers, would be to countenance the rendering of services oftentimes inconsistent with fidelity to the best interests of the government, to which the employé owes his first and highest obligation.

A receiver of a land office of the United States belongs within one of the great departments of the government. In his official capacity he has a control over very important interests connected with the public lands of the United States. He, together with the register, exercises a quasi judicial power in certain land contests which are brought before the local land office. He receipts for entries for the public lands, advises those who appear before the local land office of the conditions existing concerning the lands inquired about, is a custodian of public funds, and, generally, may be said to be an immediate representative of the General Land Office, which, in turn, is part of the Interior Department of the government of the United States. As an officer in the employ of the government, he is

limited to certain compensation, to be his under the law, and, under section 1782, is forbidden to receive or to agree to receive any compensation, whatever, directly or indirectly, for any services rendered or to be rendered to any person by himself, in relation to any proceeding or other matter or thing in which the United States is directly or indirectly interested, before any department or officer.

The defendant, as receiver, being an officer in the employ of the government, received, according to the allegations of this indictment, $800 from one Kribs, as compensation for rendering a service. This service was the giving to Kribs knowledge, ahead of that to be given generally to people, that certain lands of the United States were subject to entry by purchase, settlement, or scripping, at the land office of the district in which the defendant was receiver. I am very clearly of the opinion that this was an agreement to receive compensation for the rendition of a service. Whether the service in itself was of a proper or improper nature is not now very material; that is to say, I do not regard it as of vital importance to ascertain whether it was the duty of the defendant to give to any and to all persons the information that he is charged with having given to Kribs, inasmuch as the essence of the statutory offense is, not receiving, or agreeing to receive, compensation for proper or improper acts, but the receiving, or the agreeing to receive, compensation for service of any kind, rendered or to be rendered by himself in relation to any proceeding or other matter or thing, without regard to its character, in which the United States is directly or indirectly interested, before any department or officer. So that we have here the case of an officer of the United States charged with receiving, or agreeing to receive, $800 for services rendered or to be rendered to one Kribs by himself, the receiver. Now, the services pertained or related to public lands, which would be open to settlement and purchase; that is, lands which belonged to the United States, concerning which action had been taken by those in authority. Let it stand as correct that the question of the opening to entry of these public lands referred to in the indictment had been conclusively determined by the higher divisions of the Interior Department at Washington, and that the acts of the receiver at Roseburg were largely ministerial. Still I do not think that is of concern, provided the service to be rendered, or that was rendered, for compensation, by the defendant as receiver, related to matters or things in which the United States was directly or indirectly interested, and provided they were matters or things before any department or officer of the United States.

It needs no argument to demonstrate that the United States has a direct interest in all its public lands, and in the disposition of the same pursuant to law, and that this interest does not cease until there have been at least some steps properly taken to divest title. There was no way by which there could have been entry or purchase of the lands open to entry and purchase within the land district of the Roseburg land office, except by appropriate steps initiated and had through the United States land office situated there. And, as

long·as the United States held its lands as its own, it had a direct interest in them, and the giving of knowledge of the fact that they or portions of them were or were not subject to entry or purchase was of direct interest to the United States; the status of the lands being a matter before the land office and the officers thereof.

In the Burton Case, heretofore cited, the Supreme Court considered the argument that the United States could not be interested in any proceeding or matter pending before an executive department, unless it has a direct moneyed or pecuniary interest in the result; but the court said that such a view rests upon an interpretation of the statute which is wholly inadmissible. And, in accord with the general view of the Supreme Court, I hold that the United States has a direct interest in all its public lands, and in the right of entry or purchase thereof through proceedings to be had at any of its regularly constituted land offices.

By far the most difficult point for decision is whether the statute quoted makes it criminal for an officer to render a service for compensation in relation to a matter before the particular office over which he may preside, or in which he is an employé and where the matter may be before himself officially.

It may be that, where an officer knowingly accepts compensation not allowed by law for a service to be performed by him, in a matter before his own office and himself as an officer, penal responsibility can be fixed only under the bribery statute. Yet an officer may unlawfully accept compensation for a service perfectly proper in itself, which he performs, and still be wholly innocent of the crime of bribery as defined by the statutes of the United States. The bribery statute (section 5501 [U. S. Comp. St. 1901, p. 3709]) covers the acceptance of money or other thing where there is an intent on the part of the officer to have his decision or action in a matter pending influenced thereby. In the bribery statute we find the word "influence" used; it being essential that the consideration shall have been received with the purpose on the part of the officer to have his action or decision influenced thereby. It does not always follow, however, that the mere acceptance by an officer of compensation or gratuity for doing a service which he intends to, and ought by law to do, in a matter in his own office, carries with it an intent on his part that his action in such matter shall be influenced thereby. Such cases do not appear to be within the purview of the bribery law (section 5501), for the wrong in such instances lies, not in an intent to be influenced by the compensation, but in unlawfully and knowingly agreeing to receive or receiving the compensation for doing the service, and this without regard to the question of whether the officer intended to have his action influenced in any way by the compensation or agreement for it. If there can be no criminal liability except under the bribery statute, then there appears to be no way to punish officials who may do what is clearly wrong by accepting compensation for the performance of services before their own offices in matters in which the government is interested. I cannot believe that a construction is accurate which assumes that Congress has omitted to provide for the punishment of such viola-

tions of duty on the part of government officers. Hence it is that reflection directs me to the opinion that offenders of the latter class are properly indictable, under section 1782, for unlawfully receiving compensation. By the very terms of the statute, if any service has been rendered by any officer or clerk, in relation to a matter or thing in which the United States is directly or indirectly interested, before any officer, the offense may have been committed. The matter must be before any department, bureau, officer, or tribunal or body specified by the letter of the law. Here the case is that of an agreement to render, and the rendering of, a service for a compensation by an officer, in a matter before a land office and its officers, one of whom was defendant himself. The matter related to the public lands, and in these public lands and their disposition, as shown, the United States was directly interested.

The language of the statute to the effect that the matter must be one, and the service must be performed, "before any department, court-martial, bureau, officer, or any civil, military, or naval commission whatever," does not necessarily mean that there must be a controversial matter. Advocacy of one side as against another in a contest or matter is comprehended, but not exclusively so by text or reasonable intendment. For example, it may be of very great value to have first knowledge from land officials concerning the opening for entry of certain public lands over which no controversy whatsoever has arisen or is likely to arise. Indeed, in many cases no possible controversy can arise over the acquisition of public lands until it is known that the lands have become subject to entry or purchase; yet, if an officer of the land office agrees to accept compensation for the service of notifying one person over others, in order to give such person a preferential opportunity to acquire the lands of the United States, he has done what is prohibited in relation to a matter of direct interest to the government, and done it in a matter still before the local land office and its officers, and it is none the less a transgression that it is before the office over which the officer who does the service presides. So, too, if the agreement for compensation for the service exists, or the compensation is had, it is immaterial whether the service or act to be done, or done, relates to a matter executive or quasi judicial in its nature, or whether the officer before whom the matter pends is properly performing executive or judicial or quasi judicial functions. The service need not be the decision of a disputed question, or an act calling for discretionary conduct.

If this indictment had distinctly charged the acceptance of money for a service performed by the receiver in a land entry pending before the register of the land office, it would be quite plain that general demurrer would not be good. And, if an offense would have been completely stated under such allegation of fact, it would seem to me to be sufficient in its present form as against the receiver, charging him with receiving compensation for rendering services before the land office, even though he is himself an officer of such land office; provided, always, the matter is one in which the United States is interested.

In conclusion, it is proper to say that I regard the legal questions presented by the demurrer as very close; but, as I understand the general doctrine of the opinion of the Supreme Court in the Burton Case, supra, this indictment states an offense under section 1782, Rev. St. U. S. It sufficiently charges the official capacity of the defendant that he received compensation for services which were rendered by himself, that the matter related to lands in which the United States has direct interest, and that the matter was before a land office of the United States and the receiver thereof.

It follows that the general demurrer must be overruled.