Jeffrey VAN EE, Appellant

v.

ENVIRONMENTAL PROTECTION AGENCY and U.S. Office of Government Ethics, Appellees

No. 99–5147.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 8, 1999.

Decided Feb. 8, 2000.

John A. Flyger argued the cause for appellant. With him on the briefs were Arthur B. Spitzer and Cynthia L. Taub. Seth A. Goldberg entered an appearance.

Peter R. Maier, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Michael Jay Singer and Michael E. Robinson, Attorneys, and Wilma A. Lewis, U.S. Attorney.

Before: GINSBURG, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Jeffrey Van Ee, an employee of the Environmental Protection Agency ("EPA"), appeals the grant of summary judgment to appellees, EPA and the Office of Government Ethics ("OGE"). The district court ruled that Van Ee could not act as a spokesperson for environmental groups of which he has been a long-time member in connection with such groups' public comments on draft environmental impact statements and similar land-use plans issued by federal agencies other than EPA because doing so would violate a criminal conflict-of-interest statute, 18 U.S.C. § 205, under which a federal employee may not act as an agent or attorney for a private party in any "particular matter" in which the United States has an interest. *See van Ee v. EPA*, 55 F.Supp.2d 1 (D.D.C.1999). Van Ee contends that EPA and the district court have read the statute too broadly, and that if they have not, the statute unconstitutionally infringes his First Amendment rights of free speech and free association. Alternatively, Van Ee contends that even if the statute constitutionally applies, an OGE regulation requiring federal government employees to endeavor to avoid the appearance of violating § 205, 5 C.F.R. § 2635.101(b)(14) (1999), is unconstitutionally vague as applied.

We hold that § 205 is inapplicable to Van Ee's uncompensated communications on behalf of public interest groups in response to requests by an agency at which

he is not employed for public comment on proposed environmental impact statements related to land-use plans; these proceedings lack the particularity required by the statute, will not result in a direct material benefit to the public interest groups, and do not create a real conflict of interest or entail an abuse of position by Van Ee. Accordingly, we do not reach Van Ee's contentions concerning the First Amendment's application to § 205 or the appearance regulation, and we reverse the grant of summary judgment and remand the case for entry of a declaratory judgment in Van Ee's favor in accordance with this opinion.

## I.

Van Ee is an electrical engineer in the Office of Research and Development in the Characterization Research Division of the National Exposure Research Laboratory in Las Vegas, Nevada. The laboratory is part of EPA. Van Ee is a career civil service employee, paid at the rate of a grade 13 on the General Schedule. His work entails monitoring contaminants in air, water and soil, and recently he has been involved in developing and using computer software to characterize hazardous waste sites.

For more than twenty-five years, Van Ee has lived in the Las Vegas area, and during that time he has been an active volunteer member of various state and local environmental groups, even serving as an officer of the local chapter of certain groups.[1] The federal government owns more than 85 percent of the land in Nevada, and consequently Van Ee's volunteer work has included contact with various federal agencies, including the Bureau of Land Management ("BLM"), the Department of the Interior, the U.S. Forest Service ("Forest Service"), and the Departments of Energy and Defense. Until recent years, Van Ee communicated

regularly with these agencies regarding wildlife and public lands issues; none of his communications was related to his responsibilities at EPA.

After EPA had initiated various disciplinary actions against Van Ee and had issued advisory warnings to him concerning his representational activities, Van Ee sued EPA and OGE in 1995 in the district court seeking declaratory and injunctive relief. The complaint alleged that in 1990 EPA reprimanded Van Ee for participating in a meeting with the BLM, which focused on a proposed land transfer and the appropriate treatment of endangered desert tortoises, on the ground that under 18 U.S.C. § 205 he had impermissibly acted as an "agent" of the Sierra Club Legal Defense Fund in the meeting. EPA referred the matter to the United States Attorney's Office, which did not prosecute Van Ee. The complaint further alleged that Van Ee was warned that additional violations of § 205 could result in disciplinary action, including termination of his employment. Thereafter, through counsel, Van Ee sought guidance from EPA on how he might continue his volunteer activities without violating § 205.

As is discussed more fully below, § 205 prohibits a federal employee from acting as the "agent or attorney" of a private group in relation to a list of proceedings such as an "investigation", "contract", or "other particular matter" in which the United States has an interest. *See* 18 U.S.C. § 205(a)(2), (h). EPA advised Van Ee by letter of May 24, 1994, that he could not communicate with federal agencies on behalf of any group in an attempt to influence federal policy with respect to any "particular matter," which EPA interpreted broadly to include certain policymaking proceedings such as those in which Van Ee sought to participate, and further that Van Ee could not communicate on his own behalf in a way that would "create the ap-

---

1. These include the Southern Nevada Group of the Toiyabe Chapter of the Sierra Club ("Sierra Club"); Nevada Wildlife Federation

("NWF"); and the Nevada Outdoor Recreation Association ("NORA") (collectively "the Nevada groups").

pearance" that he is acting on behalf of another in such a matter. The complaint asserts that § 205 does not apply to proceedings in which Van Ee seeks to present the views of membership organizations in response to agency requests for public comment on land-use and wildlife conservation proposals. Alternatively, the complaint asserts that the statute unconstitutionally denies him his First Amendment rights of free speech and association. It also challenges the OGE regulation as unconstitutionally vague, providing virtually no standards to which Van Ee can conform without risking the loss of his job.

After filing his complaint, Van Ee continued to seek guidance from EPA. In 1996 he requested an advisory opinion from EPA, see 5 C.F.R. § 2635.107(b), as to whether certain proposed activities and comments he intended to provide on behalf of the Nevada groups would subject him to disciplinary action either for violating, or appearing to violate, § 205.[2] For example, in response to a proposed environmental impact statement, see 42 U.S.C. § 4332(2)(C), issued by BLM concerning its plan for managing public lands in southern Nevada, Van Ee sought to provide comments on behalf of the Sierra Club related to mining, endangered species, land exchange, recreational use, and

wilderness designation and management. In response to EPA's request for details, Van Ee elaborated that he considered it likely that some of his comments would focus on use of specific parcels of land and on the siting of power lines by two utility companies, as well as BLM's acquisition of environmentally-sensitive lands in which a mining company had an interest.

In its response, by letter of April 5, 1996, EPA advised Van Ee that it would consider his communications to be in relation to a matter covered by § 205 if the focus were on the interests of discrete and identifiable persons.[3] With respect to the BLM resource management plan, EPA advised that although such a plan itself would "probably not focus[] upon the interests of specific persons, or a discrete and identifiable class of persons, . . . . it is possible that an aspect of the Plan which Mr. Van Ee wants to discuss would [so] focus . . . and thus constitute a 'particular matter.'" With respect to the other proposed communications, EPA similarly advised Van Ee that these would violate 18 U.S.C. § 205 because they would in some way focus on "discrete and identifiable persons" and would therefore relate to a "particular matter" covered by the statute. EPA indicated, however, that Van Ee could express his personal views to federal

**2.** Van Ee proposed: (1) to give written and verbal comments on behalf of the Sierra Club on a BLM environmental impact statement ("EIS") regarding a plan to manage all public lands in Southern Nevada; (2) to attend meetings with and/or hearings before BLM and the U.S. Fish and Wildlife Service concerning a proposed habitat plan for the desert tortoise (including meetings to which NWF was exclusively invited); (3) to give written and verbal comments on behalf of NORA or the Sierra Club on the Forest Service's master plan for the Spring Mountain Recreational Area; (4) to give written and verbal comments on behalf of NORA on the "scoping phase" of BLM's EIS for the Red Rock National Conservation Area; (5) to comment on behalf of the Sierra Club on the Southern Nevada Water Authority's plans to expand the water system feeding Las Vegas; and (6) to comment for the Sierra Club on the siting of a BLM-proposed hydroelectric facility. Van Ee also proposed to request a group camping permit

from the Forest Service for NWF. It is unclear whether this last request remains at issue because EPA indicated such a request would be permissible to the extent that approval of the permit was solely ministerial. In the absence of record evidence that a concrete dispute remains, we decline to address whether such a permit request would be prohibited by § 205, and if it were, whether Van Ee's First Amendment rights would be implicated.

**3.** Noting that no regulations had been promulgated to interpret § 205, EPA purported to rely for its advice to Van Ee on 5 C.F.R. § 2635.402(b)(3), an OGE regulation interpreting "particular matter" as used in 18 U.S.C. § 208, a related conflict-of-interest provision prohibiting federal employees from participating in matters in which they have a financial interest.

agencies, could assist the organizations of which he was a member in preparing their remarks for presentation to federal agencies, and could even respond to press inquiries about the views expressed by these organizations. Since receiving this EPA advice, Van Ee has significantly reduced his volunteer appearances and communications with federal agencies, and he is no longer an officer of the Sierra Club.

## II.

■ It is EPA's interpretation of the scope of § 205(a)(2) set forth in its letter of April 5, 1996, that continues to cause Van Ee to refrain from engaging in certain communications as a spokesperson for the Nevada groups and that Van Ee challenges now. Van Ee sought a broad declaration from the district court that he had the right to communicate with federal agencies on behalf of the Nevada groups with respect to any issue unrelated to his work at EPA, *see van Ee*, 55 F.Supp.2d at 4, but the issue before this court is limited to whether Van Ee may represent the Nevada groups in the types of administrative settings addressed in EPA's April 1996 advisory letter.[4] Consequently, the issue on appeal is whether Congress intended § 205 to prohibit, on penalty of fine or imprisonment, *see* 18 U.S.C. § 216, a career federal employee from presenting the views of citizens' groups of which the employee is a member, without receiving compensation, in response to requests for public comment on proposed land-use plans issued by federal agencies other than the employing agency. *See supra* n.[2].

Interpreting the scope of matters covered by § 205(a)(2) is an issue of first impression in this circuit.

EPA implicitly determined in its 1996 advisory opinion that none of the specific terms in § 205(h) covered the public comment phase on a federal agency's environmental impact statement, as required by the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C) (1994); 40 C.F.R. § 1503.1(4) (1999). Nonetheless, EPA, and subsequently the district court, concluded that § 205's catchall phrase, "other particular matter," covered commentary on such EIS-related matters and similar federal land-use proposals. *See van Ee*, 55 F.Supp.2d at 6–7. Our review of the district court's ruling on summary judgment is *de novo*. *Independent Bankers Ass'n of Am. v. Farm Credit Admin.*, 164 F.3d 661, 666 (D.C.Cir.1999); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994).

■ We first examine the text in light of the design of the statute and the principles that a criminal statute must give fair notice of its reach and that the court should avoid where possible difficult constitutional questions. But because the text of § 205 does not precisely define the scope of covered matters, we follow the instruction of the Supreme Court that "it is … appropriate, in a case that raises questions about the scope of the prohibition, to identify the specific policies that the provision serves as well as those that counsel against reading it too broadly." *Crandon v. United States*, 494 U.S. 152, 165, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). We therefore look to the history and pur-

4. Although Van Ee urges this court to hold broadly that § 205 does not bar "federal employees … from speaking on behalf of others to federal agencies in connection with issues of public concern outside the context of legal or administrative claims or proceedings or formal, adversarial legal relationships such as contracts," the examples in his letter giving rise to EPA's response of April 5, 1996, are more confined. *See supra* n. 2. The broadly phrased relief sought by Van Ee encompasses a variety of types of communications, many of which he may have no interest in pursuing and some of which may fall within § 205 and thus require consideration of his First Amendment challenge. Because the court will not reach a constitutional question if the "issue has 'not been formulated to bring it into focus, and the evidence has not been offered or appraised to decide it,'" *Fortson v. Dorsey*, 379 U.S. 433, 439, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965) (citation omitted), our review is limited to the type of communication in which Van Ee has concretely indicated he wishes to engage.

poses of the statute, and conclude that Congress had a more limited view of § 205's coverage than is evidenced by EPA's and the district court's interpretation.

### A.

Section 205 applies to federal employees, employees of the District of Columbia, and "special Government employee[s]," defined as those serving for 130 days or less in a calendar year. *See* 18 U.S.C. § 202(a). Section 205(a), applicable to regular federal employees such as Van Ee, has two parts, one barring an employee from assisting with, or sharing in, a private party's claim against the United States, § 205(a)(1), the other subjecting a federal employee to criminal or civil penalties if the employee "acts as an agent or attorney for anyone before any department [or] agency . . . in connection with any covered matter in which the United States is a party or has a direct and substantial interest. . . ." 18 U.S.C. § 205(a)(2). A "covered matter" is defined in § 205(h) as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." *Id.* § 205(h).

■ When considering the scope Congress intended for the phrase "other particular matter," the court must construe such a provision narrowly enough to avoid rendering the preceding terms superfluous but broadly enough to avoid rendering the catchall phrase superfluous. *See, e.g., Trans Union Corp. v. FTC*, 81 F.3d 228, 233–34 (D.C.Cir.1996). Endeavoring to give effect to each term that Congress used, *see, e.g., Crandon*, 494 U.S. at 171, 110 S.Ct. 997 (Scalia, J., concurring in the judgment), we are persuaded that the length of the list in § 205 serves to provide more particularized coverage than might have been true had a single broad phrase been used. For example, superficially broad terms such as "judicial or other proceeding" or "controversy" cannot be read to render the remaining terms mere surplusage. Furthermore, not only is the scope of "other particular matter" limited by the need to give its neighboring terms independent meaning, but two familiar canons of construction lead us to presume that Congress intended "other particular matter" to be limited to administrative or judicial settings of a similar nature that share the same attributes as the preceding terms. *See, e.g., Babbitt v. Sweet Home*, 515 U.S. at 701–02, 115 S.Ct. 2407 (applying doctrine of *noscitur a sociis* or "known by the company it keeps"); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (same); *Bazuaye v. United States*, 83 F.3d 482, 484 (D.C.Cir.1996) (applying doctrine of *ejusdem generis* or "of the same kind, class, or nature").

■ We do not agree with Van Ee's contention that the terms preceding "particular matter" are limited to adversarial proceedings or formal legal relationships, for the conflicting interests at which § 205 is aimed could be equally present, for example, were a federal employee to represent a private party in its uncontested application for a broadcast license, patent, or other valuable benefit. But the fact that Congress specified that § 205 applies with respect to an "application" or "request for a ruling or other determination" so as to criminalize situations in which a private party seeking a governmental benefit enlists the representational assistance of a federal employee, who potentially could use confidential information or abuse his office or position to assist such a party, gives rise to the negative inference that Congress did not intend § 205 to act as a general gag order on federal employees.

Rather, looking solely to the text, we tentatively conclude that the limiting principle guiding Congress with respect to § 205 is that it is to apply only to matters in which the governmental decision at stake is focused on conferring a benefit, imposing a sanction, or otherwise having a

discernable effect on the financial or similarly concrete interests of discrete and identifiable persons or entities. These are situations in which a federal employee, acting as a private party's agent or attorney, could be perceived as having divided loyalty and as using his or her office or inside information to corrupt the government's decisionmaking process.[5]

This interpretation of § 205's "particular matter" is in accord with judicial and administrative interpretations of the phrase as it is used in related conflict-of-interest provisions, enacted along with § 205 as part of an "Act to strengthen the criminal laws relating to bribery, graft, and conflicts of interest, and for other purposes," Pub.L. No. 87–849, 76 Stat. 1119 (1962) ("1962 Act").[6] The circuits that have interpreted "particular matter" in these related provisions have similarly construed the term to be limited to situations in which a real danger of conflicting interests might be present.[7] Likewise, the Department of Justice's Office of Legal Counsel ("OLC") has concluded that "[t]he purpose of this language, ['particular matter'], throughout

the federal conflict of interest laws is to limit application of the laws to actions focusing upon particular, distinct, and identifiable sets of facts with reasonably measurable implications and consequences." *See Application of 18 U.S.C. § 205 to Communications Between the Nat'l Ass'n of Assistant U.S. Attorneys and the Dept. of Justice,* 18 U.S. Op. Off. Legal Counsel 212, 219 (1994) (internal quotations omitted). OLC explained that "whether the object of deliberation, decision, or action constitutes a particular matter will depend upon how closely analogous the object of the deliberation, decision or action is to the object of a typical judicial proceeding, claim, application or other matter enumerated in section 208." *Id.* (quotation and citation omitted). Both OLC and OGE have recognized that § 205 does not reach "representation ... made in connection with a broad policy matter that is directed to the interests of a large and diverse group of persons rather than one that is focused on the interest of a discrete and identifiable class." *Id.* (quoting OGE advisory opinion). In defining "particular mat-

---

5. Section 205 distinguishes between a "covered matter" applicable to regular federal employees and a "covered matter involving a specific party or parties" applicable to special Government employees. *Compare* § 205(a)(2) *with* § 205(c). Section 203 makes a similar distinction and § 207, applicable to former employees, also uses the "specific party or parties" limitation. *See* 18 U.S.C. §§ 203(c); 207(a)(1)(C), (a)(2)(C). This distinction suggests potentially broader coverage of the relevant provisions for regular employees. The legislative history indicates that the "specific party or parties" language was added to render the provisions inapplicable to rulemakings with respect to special Government and former employees. *See* 108 CONG. REC. 21981 (Oct. 3, 1962); S.REP No. 2213 at 2–3 (1962). However, this distinction is muddled by the addition of § 207(i), which specifically defines "particular matter" to include "rulemaking" while § 207 elsewhere retains the "specific party or parties" limitation, in the Ethics Reform Act of 1989, Pub.L. No. 101–194, 18 U.S.C. § 207(i). Assuming that § 205 covers at least some rulemakings with respect to regular employees and none with respect to special Government employees, that fact sheds little light on whether Congress intend-

ed § 205(a)(2) to extend beyond rulemakings to the types of administrative settings at issue in the instant case.

6. Other than in the 1962 Act, the phrase "particular matter" appears in certain agency-specific conflict-of-interest provisions, some of which were enacted after the 1962 Act. *See* 7 U.S.C. § 2008j(f)(10)(A) (prohibiting members of Board of Directors of the National Sheep Industry Improvement Center from voting on interested transactions); 7 U.S.C. § 5903(j)(1) (same for Board members of the Alternative Agricultural Research and Commercialization Corporation); 40 U.S.C. app. § 108(a) (similar provision for members of Appalachian Regional Commission); 43 U.S.C. § 1355 (post-employment provision applicable to former high-ranking Department of Interior employees).

7. *See United States v. Wallach,* 979 F.2d 912, 920–21 (2d Cir.1992); *United States v. Williams,* 705 F.2d 603, 622 (2d Cir.1983); *cf. United States v. Myers,* 692 F.2d 823, 857 (2d Cir.1982); *United States v. Medico Indus., Inc.,* 784 F.2d 840, 843–44 (7th Cir.1986); *see also CACI, Inc. v. United States,* 719 F.2d 1567, 1576 (Fed.Cir.1983).

ter" as used in § 208's ban on a federal employee's participation in a matter in which the employee has a financial interest, OGE has codified its view of the term:

> The term particular matter encompasses only matters that involve deliberation, decision, or action that is focused upon the interest of specific persons, or a discrete and identifiable class of persons. Such a matter is covered by this subpart even if it does not involve formal parties and may include governmental action such as legislation or policy-making that is narrowly focused on the interest of such a discrete and identifiable persons. The term particular matter, however, does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons.

5 C.F.R. § 2635.402(b)(3) (1999).

█ However, neither the text nor this interpretive consensus concerning the general distinction between covered and uncovered matters fully addresses the more difficult issue presented in Van Ee's appeal, namely, to determine how particularized the focus of decision or action in a proceeding must be for it to be a "particular matter" under § 205. EPA advised Van Ee that even though the public comment phase on a resource management plan or similar land-use proposal would appear to be a broad policymaking matter outside the scope of § 205, if an aspect of such a plan might focus on "a discrete and identifiable class of persons" that would turn the proceeding into a covered "particular matter." While determining the scope of "particular matter" is fact-specific to a degree, because § 205 is a criminal statute, it must be interpreted so as to afford fair warning of its reach. *See Crandon,* 494 U.S. at 160, 110 S.Ct. 997; *cf. Myers,* 692 F.2d at 857.

█ Moreover, although our interpretation of § 205's scope rests on independent grounds, it is compatible with the principle that in interpreting the reach of the statute, a court must bear in mind that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States,* 526 U.S. 227, ——, 119 S.Ct. 1215, 1222, 143 L.Ed.2d 311 (1999) (internal quotations and citations omitted). As a public employee Van Ee retains his First Amendment rights to speak on matters of public concern upon entry into public service. *See e.g., United States v. National Treasury Employees Union,* 513 U.S. 454, 465, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995); *Pickering v. Board of Ed. of Township High Sch. Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Sanjour v. EPA,* 56 F.3d 85, 90 (D.C.Cir.1995) *(in banc).* The district court determined that Van Ee's proposed communications were related to matters of public concern, *e.g., van Ee,* 55 F.Supp.2d at 9–10, and concluded that even though under § 205 Van Ee remained free to state his own views on any matter, to join any organization and represent it in any nonfederal forum, and to assist the person who represents an organization before a federal agency in preparing the organization's statement, *id.* at 9, his First Amendment interests were nonetheless burdened by EPA's application of § 205 that "discourage[s] speech by undermining the motive and opportunity for the speech." *Id.* at 10. We need not endorse or reject this formulation of the First Amendment issues to agree that Van Ee has raised a serious question about the constitutionality of applying § 205 to his proposed communications.

Thus, we examine § 205 to determine whether it is susceptible of being construed so that it does not apply to Van Ee's conduct. Because the text of § 205 leaves ambiguous whether Congress intended to prohibit a federal employee from acting as a representative of citizens' groups of which the employee is a member in response to federal agencies' requests for comment on proposed land-use plans,

we turn to the history and purpose of the statute for further guidance. *See National Labor Relations Bd. v. Catholic Bishop of Chicago,* 440 U.S. 490, 504, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

**B.**

Section 205 was enacted in 1962 as part of what might be viewed as a third major effort by Congress to define conflict-of-interest restrictions for federal employees. The first phase lasted until the mid-nineteenth century, during which only limited and targeted prohibitions were in effect. In the second phase, public pressure led to passage of seven statutes of broader applicability, some of which were aimed at restricting federal employees from assisting private parties in prosecuting claims against the government. One of those, 18 U.S.C. § 283 (repealed 1962), was § 205's direct predecessor. In the third phase, Congress enacted § 205 as part of an effort to bring greater coherence to the separately-enacted statutes from the Civil War era in view of the changed nature of the federal government and the Cold War era.[8]

Prior to the mid-nineteenth century, federal conflict-of-interest legislation applied only to specific departments and to specific activities, leaving noticeable gaps.[9] For example, no provision prohibited federal employees from using their position, influence, or inside knowledge to act as an agent or attorney on behalf of private parties who had asserted claims against the United States. This was problematic because before the Court of Claims was established in 1855, private claims against the government were handled either through private acts of Congress or directly by the relevant executive department. *See* SPECIAL COMM. ON THE FEDERAL CONFLICT OF INTEREST LAWS, ASS'N OF THE BAR OF THE CITY OF NEW YORK, CONFLICT OF INTEREST AND FEDERAL SERVICE [hereinafter "New York City Bar Report" or "N.Y. BAR REPT."] 31–32 (1960) (footnote omitted). Claim proceedings before the departments were often conducted ex parte and without adversary proceedings. *Id.* This system led to influence peddling, information selling, and the dissipation of public funds. *Id.*

Spurred by presidential pressure and increasing public attention to such paradigmatic conflicts of interest, Congress enacted seven statutes that applied to the executive branch and, in some cases, to Congress. The first of these, § 205's direct predecessor, was "An Act to Prevent Frauds on the Treasury of the United States," 10 Stat. 170 § 2 (1853), as amended, 18 U.S.C. § 283 (repealed 1962). Section 283 prohibited an officer or employee of the United States or of the Senate or House of Representatives from "act[ing] as an agent or attorney for prosecuting any claim against the United States, or aid[ing] or assist[ing] in the prosecution or support of any such claim...." *Id.* In the 1860s, Congress added further prohibitions, partially in response to high-profile procure-

---

**8.** Subsequent to § 205's enactment in 1962, Congress broadly amended federal conflict-of-interest law in the Ethics in Government Act of 1978, Pub.L. No. 95–521, 92 Stat. 1824 (1978) and the Ethics Reform Act of 1989, Pub.L. No. 101–194, 103 Stat. 1716, 1750–51 (1989), and Congress made minor amendments to § 205 in Pub.L. No. 101–280 § 5(c) (1990) and in Pub.L. No. 104–177 § 2 (1996). These changes do not affect the issues presented in the instant case.

**9.** An early statute prohibited the Secretary of the Treasury from having certain private financial interests or engaging in certain trans-

actions, such as purchasing public lands, that could conflict with his departmental responsibilities. *See* 1 Stat. 67 (1789), as amended, Rev. Stat. § 243 (1875), 5 U.S.C. § 243 (repealed 1962). By contrast, prior to the Civil War-era, other department heads and Members of Congress were free to represent private parties in court or before commissioners so as to prosecute claims against the United States or to speculate in the market for public lands. *See* CONG. GLOBE, 32d Cong., 2d Sess. 289–90 (1853) (remarks of Rep. Stephens (Ga.)).

ment scandals.[10] Directly relevant here is former 18 U.S.C. § 281, enacted at 13 Stat. 123 (1864), which was closely related to former § 283.[11] Of the remaining five statutes, each also repealed by the 1962 Act, some shared § 283's limited application to matters involving a "claim against the United States".[12]

As with current § 205, both former §§ 283 and 281 were directed at the problem of divided loyalty, targeting a federal employee's assistance to outside interests in certain dealings with the government. Section 283 focused on representational assistance by an executive or legislative branch employee, other than a Member of Congress, in connection with claims against the government, regardless of whether the federal employee received compensation. Section 281 reached a broader range of assistance, covering not just prosecution of claims against the United States but also the "rendering [of] service" in relation to administrative proceed-

ings in which the United States has an interest, but applied only where the federal employee received compensation for his or her services. *Cf. United States v. Myers*, 692 F.2d 823, 856–57 (2d Cir.1982).

With the dramatic growth of the federal government, the nature of federal service changed, giving rise to new potential conflicts of interest. *See* N.Y. BAR REPT. at 131–34. In the post-New Deal era, and after commencement of the Cold War, increasing demand by administrative agencies and the military for specialized government employees, particularly scientists and attorneys, led to increased opportunities for such employees to capitalize on government service in the private sector. *See e.g.*, S.REP. No. 87–2213 at 6–7 (1962); H.R.REP. No. 86–2068 at 5–7 (1960); 107 CONG. REC. 6836 (Apr. 27, 1961). Restrictive judicial interpretations of the Civil War-era statutes made it apparent that legislation would be required to respond to emerging forms of conflicts of interest.[13]

**10.** For example, in one scheme, military employees purchased defective rifles from the government for $3.50 each and then resold the rifles to the government for $22. *See* N.Y. BAR REPT. at 34–35.

**11.** Section 281 prohibited receipt of "compensation for any services rendered or to be rendered ... in relation to *any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter"* in which the United States has an interest. 18 U.S.C. § 281 (repealed 1962) (emphasis added). Prior to 1948, the list ended with "other matter or thing." *E.g. United States v. Booth*, 148 F. 112, 114 (C.C.D.Or.1906); *see also* BAYLESS MANNING, FEDERAL CONFLICT OF INTEREST LAW 52 n.71 (1964).

**12.** The statutes repealed by the 1962 Act were: 18 U.S.C. § 216 (enacted in 1862, prohibiting compensation for assisting in procurement of government contracts); *id.* § 434 (enacted in 1863, requiring disqualification from matter in which employee had personal interest); 5 U.S.C. § 99 (enacted in 1872, prohibiting former executive branch employee from prosecuting claim that had been pending at the time of his federal employment); 18 U.S.C. § 284 (composite of 1919 and 1944 acts as criminal analog to 5 U.S.C. § 99); *id.* § 1914 (enacted in 1917, prohibit-

ing compensation of government employees from outside sources). *See* Pub.L. No. 87–849 §§ 1(c), 2, 3, 76 Stat. 1119, 1127–28 (1962); *see also Crandon*, 494 U.S. at 160–63, 110 S.Ct. 997.

    In addition to these branch-wide provisions, Congress periodically enacted agency-specific prohibitions on outside interests. *See, e.g.*, 24 Stat. 383 (1887) (ICC); 38 Stat. 717 (1914) (FTC); 46 Stat. 797 (1930) (FPC); 48 Stat. 1066 (1934) (FCC); 52 Stat. 980 (1938) (CAB). For exemptions, *see* H.R.REP. No. 86–2068 at 3–4 (1960).

**13.** *See, e.g., United States v. Bergson*, 119 F.Supp. 459 (D.D.C.1954), where the district court dismissed the indictment of a former Justice Department attorney for his post-employment representation of corporate clients seeking pre-merger approval from the Department on the ground that 18 U.S.C. § 284 (repealed 1962) did not apply because such representation was not in connection with a "claim against the United States." *See also Hobbs v. McLean*, 117 U.S. 567, 575, 6 S.Ct. 870, 29 L.Ed. 940 (1886); *United States v. 679.19 Acres of Land*, 113 F.Supp. 590, 593–94 (D.N.D.1953). Although the district court in *Bergson* construed the term "claim" in the context of § 284, Congress and the President understood the holding to apply to § 283 as well. *See, e.g.*, 107 CONG. REC. 6836 (Apr. 27,

In addition, the increasing number of potential temporary government employees who rejected such positions for fear that the conflict-of-interest provisions, such as the revolving door provision, would impede their return to the private sector led Congress to adapt federal conflict-of-interest law to such "special employees". *See, e.g., Hearings on H.R. 302, H.R. 3050, H.R. 3411, H.R. 3412, and H.R. 7189 Before the Antitrust Subcomm. (Subcomm. No. 5) of the Comm. on the Judiciary of the House of Representatives,* 87th Cong. 106–09, 120–22 (1961) [hereafter *House Subcomm. Hearings*].

Thus Congress enacted the 1962 Act in response to the judicial narrowing of the Civil War-era statutes and the changing nature of federal service in an attempt to modernize, clarify, and bring greater coherence to the separately-enacted Civil War-era statutes. *See* Roswell B. Perkins, *The New Federal Conflict-of-Interest Law,* 76 Harv. L.Rev. 1113, 1115–17, 1122–23 (1963). The 1962 Act was aimed at a host of concerns, and § 205 is merely one strand of an intricate scheme of regulations governing federal employees' conflicts of interest.[14] The history of the 1962 Act reflects congressional focus on direct conflicts of interest, misuse of confidential government information, and abuse of position, confirming both that Congress intended to broaden the predecessor representational-assistance provision, former § 283, beyond claims for money or property, and also to limit the breadth to other situations in which a private party might improve its chances of obtaining a benefit or avoiding a sanction if its agent or attorney in such a proceeding were a federal employee.

The final version of § 205 emerged as an amalgam of three similar bills introduced during the 87th Congress. *See generally House Subcomm. Hearings.* With respect to the representational-assistance provision, each bill expanded the coverage of former § 283 beyond claims against the government by importing the list of proscribed proceedings that had been covered by the compensated assistance provision, former § 281, into what is now § 205.[15] Although some language in the legislative history suggests an understanding that this textual change would cover "all" matters coming before a federal agency, *see* H.R.Rep. No. 87–748 at 20, it is readily apparent that Congress had a more limited view of its task, inserting two additional

---

1961) (message from the President); H.R. Rep. No. 87–748 at 21 (1961); S.Rep. No. 87–2213 at 5.

**14.** For example, surrounding § 205 are provisions making it a crime to bribe a federal employee or for such employee to accept a bribe (§ 201; *cf.* 18 U.S.C. § 217, 26 U.S.C. § 7214(a)(9) (1994)); to compensate a federal employee for his or her assistance to anyone involved in a proceeding in which the United States has a direct and substantial interest (§ 203); for certain federal employees to engage in certain post-employment conduct involving the United States (§ 207); for an employee to participate in any decision or proceeding relating to a matter in which she has a financial interest (§ 208), and for an employee to receive any "contribution to or supplementation of salary" from a non-governmental source (§ 209). *Cf. United States v. Sun–Diamond Growers of California,* 526 U.S. 398, ——–——, 119 S.Ct. 1402, 1408–09, 143 L.Ed.2d 576 (1999);

*see also Crandon,* 494 U.S. at 158, 110 S.Ct. 997.

**15.** *See House Subcomm. Hearings* at 7–8, 19, 22–23. The list initially imported, in slightly modified form, into early drafts of § 205 was "any proceeding, contract, claim, controversy, charge, accusation, arrest or other matter." *Id.* at 19 (rearranging and omitting "investigation" and "judicial or other proceeding" from the § 281 list). The bills drafted by the Administration and in the New York City Bar Report would have grouped these matters under an umbrella phrase, "transaction involving the Government," indicating an understanding that the list covered those administrative settings in which private interests stood to experience ascertainable gains or losses resulting from an administrative decision. *See id.* at 7, 23. In 1989 Congress amended § 205 to group the terms under the umbrella phrase "covered matter," defined by the same list of matters as had been in subsection (a)(2), in newly added subsection (h).

terms—"application" and "request for a ruling or other determination", *House Subcomm. Hearings* at 53–54—to cover specific types of proceedings in which a real conflict of interest might arise. *See* H.R.REP. No. 87–748 at 21; *see also* S.REP. No. 87–2213 at 5.

In the 1962 Act, Congress did not intend § 205 to extend beyond situations in which there was a real conflict of interest or which potentially presented an opportunity for abuse of office, misuse of confidential information, or similar conflicts of interest to arise. Congressional reports explained that the final bill limited § 205 to situations in which the federal employee acts as an "agent or attorney" rather than merely "aids or assists" a private party because "inclusion of the term 'aids or assists' would permit a broad construction embracing conduct not involving a real conflict of interest." *Id.*[16] Also, Congress narrowed the catchall phrase from "other matter" to "other particular matter," in order "to emphasize that the restriction applies to a specific case or matter and not to a general area of activity." H.R.REP. No. 87–748 at 20.[17]

Contemporaneous interpretation of the proscribed list of matters covered by § 205 also indicates that the section was not intended to apply to a federal employee's volunteer activities on behalf of environmental groups because such activities would not give rise to the type of divided loyalty at which the statute was aimed. The authors of the New York City Bar Report wrote:

> Whether an employee is intermittent or regular, his [or her] political and other organizational affiliations and activities will not be affected by the section except in the most unusual situations. An employee who is a member of an organization to protect wildlife, for example, will not run afoul of section 4 [the Bar bill's very similar version of § 205], even if he [or she] actively helps the organization in its efforts to influence federal policy in the direction of better wildlife protection.

N.Y. BAR REPT. at 209.

In sum, when crafting § 205, Congress did not intend to bar a federal employee from representing outside interests in all matters in which the United States has an interest. Instead, Congress imported the list of proscribed activities from the former compensated-assistance provision (§ 281) into § 205, updated that list by extending coverage to an "application" and "request for a ruling or other determination," and narrowed the catchall phrase, "other matter", in former § 281 to "other particular matter."

### C.

This history clarifies EPA's misinterpretation of the scope of § 205. Under EPA's approach, the scope of § 205 turns not on the nature of the matter but on the content of the federal employee's comments. For example, EPA advised Van Ee that because some of the comments he

> *See* Ethics Reform Act of 1989 § 404, Pub.L. No. 101–194, 103 Stat. 1716, 1750–51 (1989).

**16.** Similarly, with respect to the revolving door provision, the Senate Judiciary Committee opined:

> Whatever the merit of this prohibition at a time when the Government departments were fewer in number and much smaller in size, it makes very little sense today. Thus, it is hard to advance a reasonable justification for precluding a former Commerce Department attorney, for 2 years or for any length of time, from representing before the Treasury Department a private client who

> has a claim for an income tax refund with which the attorney never had any connection while in Government service.

S.REP. No. 87–2213 at 5–6.

**17.** When the House Judiciary Committee reported the bill, "other matter" had become "other particular matter" in the new compensated-assistance provision, § 203, without reflecting a corresponding change in § 205. *See* H.R.REP. No. 87–748 at 1, 37, 39. However, in the version of the bill on which the entire House voted, "particular" was added before "matter" in § 205 as well. *See* H.R. 8140, as amended, 87th Cong. at 11 (Jul. 20, 1961).

expected to make as a spokesperson in relation to the BLM's plan for managing public lands in southern Nevada would focus on use of specific parcels of land and on the siting of power lines by two utility companies, as well as BLM's proposed acquisition of environmentally-sensitive lands in which a local mining company had an interest, those comments would be in relation to a covered "particular matter." By contrast, EPA advised, had Van Ee sought to convey to BLM only a generalized concern about preserving sufficient recreational space, Van Ee's acting as spokesperson would not have been in relation to a "particular matter" even though the proceeding—public comment on BLM's resource management plan—was the same.

EPA's elastic approach broadens § 205 beyond the range intended by Congress, is inconsistent with the OGE regulation on which EPA purportedly relied, and fails to provide federal employees with fair warning of the scope of permissible representational activities. Rather, whether an administrative proceeding is a "particular matter" under § 205 is determined by the nature and focus of the governmental decision to be made or action to be taken as a result of the proceeding. Only where the decision is focused on a probable particularized impact on discrete and identifiable parties are the concerns animating § 205 implicated. Thus, EPA's advice to Van Ee was flawed insofar as it hinged upon the specific nature of the comments that Van Ee sought to make and their possible relationship to aspects of the decision that might ultimately affect specific groups or individuals, rather than upon the overall focus of the proceeding itself.

Even to the extent that some of Van Ee's comments would have concerned proposed actions likely to have a discernible impact on the interests of identifiable parties, *see supra* n. 2, the focus of the decisions to be made are of a much broader nature. For example, the focus of decision following the public comment phase on a proposed EIS—what to include in the final EIS—is not on the interests of particular groups or individuals. As the court has recently reiterated, the heart of the EIS is the requirement that an agency rigorously explore and objectively evaluate the projected environmental impacts of all reasonable alternatives for completing the proposed action. *City of Alexandria v. Slater*, 198 F.3d 862, 866 (1999) (citing 40 C.F.R. § 1502.14). Moreover, even the types of proposed actions for which the relevant EIS's were issued focused on diverse sets of interests, such as how to reconcile or balance recreational, conservation, and commercial interests in a land-use plan covering considerable territory.

In other words, the concreteness that § 205 requires by way of a "particular matter" is absent when a public interest group is responding to an agency's call for public comment on a broad plan for land management. Van Ee does not seek, for example, to participate in proceedings involving the granting of a license to operate a concession on public lands or some similar benefit. Rather, the proceedings in which Van Ee seeks to participate call for the provision of the Nevada groups' views as to the potential environmental impacts of proposed action under consideration. Although in a very broad sense such proceedings may serve to advance the interests of a public interest group to the extent that the agency adopts its views or moderates proposals to address considerations of importance to the public interest group, this is hardly the situation that caused Congress to enact a criminal statute to preserve the integrity of governmental service and decisionmaking. The OGE regulation expressly reflects the understanding that "the term 'particular matter' does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons," 5 C.F.R. § 2635.402(b)(3). The proceedings at issue here simply do not present the problems that Congress sought to cure as nothing in

the record remotely suggests that Van Ee has a real conflict of interest or is misusing government information or otherwise abusing his position.

EPA also failed to acknowledge the implications of its restrictive interpretation when it opined that the First Amendment was not implicated because Van Ee could express his own views and even prepare the views of the public interest groups of which he is a member and explain those views to the media. Allowing Van Ee to do everything except identify himself publicly as the author of a group's commentary, would appear to foster secret influence peddling seemingly oblivious to congressional concerns to avoid the misuse of governmental information, office, or position.

For these reasons, we conclude that the prohibitions Congress established in § 205 are not so broad as is stated in EPA's advice of April 5, 1996, to Van Ee. Neither the text nor the legislative history demonstrates a congressional intent to prevent federal employees from representing nongovernmental interests without compensation in proceedings in which broad policy issues are at stake because the causal link giving rise to a conflict of interest would be too insubstantial. *Cf.* S.Rep. No. 87–2213 at 5–6. The legislative record confirms that Congress intended § 205 to have a broader reach than its predecessor but also that § 205 would not reach the EIS and similar land-use proceedings in which Van Ee seeks to participate as an agent of the environmental groups of which he is a member.[18] The interpretive consensus lends further support to our conclusion that § 205 is properly understood to apply to those matters in which a federal employee's representational assistance could potentially distort the government's process for making a decision to confer a benefit, impose a sanction, or otherwise to directly effect the interests of discrete and identifiable persons or parties. As a result, § 205 leaves career federal civil servants free to voice the concerns of citizens' groups of which they are members on broad policy issues because the likelihood that such representational assistance could divide the loyalty of the employee or distort the decisionmaking process is minimal. Our interpretation of § 205's scope fully addresses Congress' concerns about conflicts of interest that may arise when federal employees assist outside interests in governmental proceedings, while leaving federal employees such as Van Ee free to play a representational role for groups of which they are a member in certain settings, and also has the salutary effect of avoiding potentially grave constitutional concerns that would arise were § 205 construed to cover Van Ee's acting as a spokesperson for the groups of which he is a member. *See Rust v. Sullivan,* 500 U.S. 173, 190, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); *see also Jones v. United States,* 526 U.S. at ——, 119 S.Ct. at 1228.

Accordingly, without reaching Van Ee's constitutional challenges to § 205 or the appearance regulation, 5 C.F.R. § 2635.101(b)(14), we reverse the judgment of the district court and remand the case so that the district court may award declaratory relief to Van Ee consistent

---

**18.** Van Ee also contends that § 205 does not apply to his communications because he would not communicate as the "agent or attorney" of the groups of which he is a member. *See* 18 U.S.C. § 205(a)(2). Relying in part on this court's prior interpretation of "agent or attorney," *see Bailey,* 498 F.2d at 679, the district court rejected his contention. *See van Ee,* 55 F.Supp.2d at 7–8. Our holding that § 205 does not apply to Van Ee's proposed communications does not rest on Van Ee's proposed construction of "agent or attorney." *See Refine Const. Co. v. United States,* 12 Cl.Ct. 56, 61 (1987); *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *Neder v. United States,* 527 U.S. 1, ——, 119 S.Ct. 1827, 1840, 144 L.Ed.2d 35 (1999); Restatement (Second) of Agency § 1(1) & cmt. a, §§ 12–14; *Cf. United States v. Sweig,* 316 F.Supp. 1148, 1156–57 (S.D.N.Y.1970).

with this opinion.[19]

**19.** Van Ee also sought injunctive relief, but the record before this court does not provide a basis for such relief. Compare 28 U.S.C. § 2201 with Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977).